Larry **CLARK**, Et Al., Appellants,

v.

**OTIS ENGINEERING CORPORATION,**
Appellee.

No. 8933.

Court of Appeals of Texas,
Texarkana.

Feb. 16, 1982.

Rehearing Denied March 23, 1982.

Judson Francis, Jr., Francis, Francis & Lavender, Dallas, W. James Kronzer, Kronzer, Abraham & Watkins, Houston, for appellants.

John H. McElhaney, C. Michael Moore, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellee.

CORNELIUS, Chief Justice.

Larry Clark and Clifford Clark filed suit against Otis Engineering Corporation to recover damages for the deaths of their wives, Janis Clark and Geraldine Clark, in an automobile collision. They appeal from the trial court's rendition of summary judgment against them.

The summary judgment evidence consisted of several witnesses' depositions. Viewing the deposition testimony in the light most favorable to the Clarks, as is required in this posture of the case, the evidence reveals the following: Robert Matheson was employed by Otis Engineering Corporation as a machinist at its plant on Belt Line Road in Carrollton, Texas, near Dallas. He had a history of drinking alcoholic beverages while on duty and he had acquired a reputation as a quarrelsome and undependable employee. Matheson's shift was from 3:00 p. m. until 11:00 p. m. He was allowed a dinner break, which on the day of the accident he took and returned to his post of duty some time prior

to 9:15 p. m. At the dinner break and on other occasions during his work shift that day, he went to the parking lot, apparently to his automobile where he consumed alcoholic beverages. Matheson's supervisor was Donald Roy. Rennie Pyle was a co-worker who assisted Matheson and also supervised him on occasions. Mr. Pyle testified that he knew of Matheson's drinking on previous occasions as well as the day in question, and that he told Mr. Roy on that day that Matheson was not acting right, was not coordinated, was slurring his words, and that "we need to get him off the machine." Another fellow worker, David Sartain, testified that Matheson was either sick or drinking, was steadily getting worse, "his complexion was blue and like he was sick", and that he was weaving and bobbing on his stool about to fall into his machine. Mr. Roy testified that he observed Matheson's condition throughout the afternoon and the evening, and that Rennie Pyle reported to him that Matheson was not acting right and that they needed to get him off the machine. When Matheson returned to his work station around 9:15, Roy was waiting for him. Matheson's condition had not improved. Roy then suggested that Matheson go home. Roy walked him to the parking lot and told him "I want you to go home and get a good night's rest and come in tomorrow if you feel better." Roy asked Matheson if he was all right and could he make it home, and he answered that he could. Roy testified that the company maintained a nurse's station at the plant where ill or disabled employees could be taken and cared for, but Matheson was not taken there.

Some five to eight minutes after Matheson drove away from the plant onto Belt Line Road his automobile and another automobile were involved in a collision in which he, the two Mrs. Clarks, and another person were instantly killed. Dallas County's Medical Examiner, Dr. Charles Petty, testified that Matheson had a blood alcohol content of 0.268 which indicated that prior to his death he had ingested a large quantity of alcohol, an amount representing some sixteen to eighteen cocktails if consumed over a period of one hour, or twenty to twenty-five cocktails if consumed over a period of two hours. He stated that persons working around Matheson would undoubtedly have known of his condition, and that 100% of persons with that much alcohol concentration in their blood would exhibit signs of intoxication observable to the average person.

Otis' motion for summary judgment was based upon its contention that, as a matter of law it had no duty to restrain Matheson on the occasion in question or to control his actions while he was off-duty and not on its premises. The Clarks' contend that the summary judgment evidence at least raised genuine issues of fact on the question of whether Otis had a duty to restrain Matheson, or on the question of its liability for the consequences of Matheson's actions under the doctrine of negligent retention of an employee.

■ A defendant moving for summary judgment on the whole case has the heavy burden to show by uncontradicted summary judgment evidence that at least one of the essential elements of the plaintiffs' cause of action has been conclusively established against plaintiffs, and that as a matter of law they cannot recover. *Gibbs v. General Motors Corporation,* 450 S.W.2d 827 (Tex. 1970); *McGuire v. Overton Memorial Hospital,* 514 S.W.2d 79 (Tex.Civ.App—Tyler 1974), *writ ref'd n.r.e. per curiam,* 518 S.W.2d 528 (Tex.1975).

We conclude that the Clarks failed to raise a material issue on their theory of recovery based on negligent retention, because the summary judgment evidence establishes an absence of the required causal relation between the hiring and retention of Matheson and the occurrence of the collision, but we believe an issue was made concerning Otis' failure to restrain or control Matheson.

■ In ordinary circumstances, a person has no duty to use care to control the conduct of a third person in order to prevent that person from causing harm to others unless there exists between the actor

and the third person some special relation which imposes such a duty. Restatement (Second) of Torts § 315 (1965). The bare relation of employer-employee is not one which in itself imposes such a duty unless the employee is upon the employer's premises or using his chattel, and the employer has the required knowledge of ability and necessity for controlling the employee. *Pilgrim v. Fortune Drilling Co., Inc.*, 653 F.2d 982 (5th Cir. 1981); *Trammell v. Ramey*, 231 Ark. 260, 329 S.W.2d 153 (1959); Restatement (Second) of Torts § 317 (1965). Nevertheless, such a relation may arise when a person takes charge of a third person whom he knows or should know is likely to cause harm to others if not controlled. Restatement (Second) of Torts § 319 (1965); *Missouri, K. & T. Ry. Co. of Texas v. Wood*, 95 Tex. 223, 66 S.W. 449 (1901); *University of Louisville v. Hammock*, 127 Ky. 564, 106 S.W. 219 (1907); *Austin W. Jones Co. v. State*, 122 Me. 214, 119 A. 577 (1923).

One of the earliest cases to apply this principle is *Missouri, K. & T. Ry. Co. of Texas v. Wood*, supra, where our Supreme Court held that a railroad company which negligently allowed an employee suffering from smallpox to escape from quarantine was liable to others who were exposed to the disease by coming into contact with him after his escape. Other cases have applied the general rule to an infirmary which negligently allowed a crazed and drunken inmate to escape from his room and injure another inmate, *University of Louisville v. Hammock*, supra, and where the superintendent of a state insane asylum negligently paroled an inmate who later destroyed the plaintiff's property by burning it, *Austin W. Jones Co. v. State*, supra.

■ Otis argues that there is no evidence raising a fact issue as to whether it took or attempted to take control of Matheson on the occasion in question. We cannot agree. Matheson was so intoxicated that he was practically helpless. His supervisor found it necessary to take him off duty before his work shift ended in order to protect him from the machine on which he was working. He was ordered to go home prior to the end of his shift,[1] and the supervisor accompanied him to the parking lot to begin his ill-fated attempt to reach home by driving on the heavily traveled highway. Viewing these facts and the other summary judgment evidence most favorably to the appellants, we find them sufficient to raise a genuine issue of fact on the question of whether Otis, through its agents and employees, took charge or attempted to take charge of Matheson at the time of these events.

■ There is also sufficient summary judgment evidence raising fact issues as to negligence and proximate cause. Matheson's extreme intoxication on the occasion was well known to his supervisor and his fellow workers. They knew that he was not in a condition to drive safely. They had a nurse's station available where ill or disabled employees could be taken and cared for, yet they accompanied him to the parking lot and, it may be inferred, sent him out on the highway. Mr. Roy testified that he feared Matheson might have a collision, and when he heard of the wreck he immediately suspected that Matheson was involved. There is no summary judgment evidence that Matheson's intoxication actually caused the collision, but Otis did not attempt to negate that fact in its summary judgment motion, so if fact issues were raised on the other essential elements of the Clarks' cause of action, Otis failed to carry its burden to sustain a summary judgment. 4 McDonald, Texas Civil Practice § 17.26.2, pp. 134, 135 (rev. 1971).

Cases relied upon by Otis, such as *Pilgrim v. Fortune Drilling Co., Inc.*, supra, and others are clearly distinguishable. In *Pilgrim*, for example, where the claim of negligence was based on the employer's failure to prevent exhausted employees from driving long distances to their homes, there was no evidence of an assumption of any degree

---

1. Mr. Roy testified that, after taking him off his machine, he "suggested" that Matheson go home, but that if Matheson had not taken the suggestion, he would have ordered him to go, a matter which was within his authority.

of control over the employee by the employer, there was no evidence that the employee was obviously incapacitated, the employee's work shift had terminated, and he had voluntarily left the premises.

We are not to be understood as holding that in ordinary circumstances an employer is responsible for the acts of his employees while they are off duty, off premises, and not using company facilities. The contrary is the case, even if the employer knows of a dangerous condition involving the employee. See *Trammell v. Ramey*, supra. But where the employer-employee relationship exists and there is action on the part of the employer amounting to an assumption of some control over the employee who is likely to be dangerous to others, that special relation recognized by the Restatement in § 319 arises, which may in a proper case impose a duty of reasonable care and the resulting liability if that duty is breached.

The decisions have thus far applied the rule of control only where there has been a type of institutional custody of the dangerous person, but we do not believe the rule should necessarily be restricted to that type of case. Rather, we think its application should depend upon the facts of each case, evaluated upon a consideration of the defendant's ability, opportunity and duty to act, and the reasonable foreseeability of the consequences of a failure to act.

The issue is not Otis' failure to control Matheson's conduct on the highway; it is the failure to control him before he got on the highway. In fact, it may be said that appellants' case here is not merely that of a failure to exercise reasonable care to restrain Matheson; the evidence can be construed to show an element of affirmative action in Otis' sending from its premises onto a crowded highway a person so dangerous to himself and others. It has been held that when such affirmative action is involved, liability may be imposed even though there is no relationship between the defendant and the dangerous person. *Leppke v. Segura*, 632 P.2d 1057 (Colo.App. 1981).

Obviously, we are not holding that the evidence establishes the Clarks' cause of action. It may or may not do so in a trial of the case. We simply conclude that, viewed most favorably to their position, material issues of fact have been raised which preclude summary judgment.

For the reasons stated, the judgment of the trial court is reversed and the cause is remanded for trial.