No. 60,886

Gregory E. Meyers, *Appellant*, v. Jon A. Grubaugh, *Defendant*, and State of Kansas, *Appellee*.

(750 P.2d 1031)

Opinion filed February 19, 1988.

*Dan L. Smith*, of Bronston & Smith, of Overland Park, argued the cause and *Lloyd Burke Bronston*, of the same firm, was with him on the brief for appellant.

*David Plinsky*, assistant attorney general, argued the cause and *Nancy L. Ulrich*, assistant attorney general, *Carl A. Gallagher*, assistant attorney general, and *Robert T. Stephan*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

Lockett, J.: Plaintiff, Gregory E. Meyers, was injured when his car was struck by a car driven and owned by Jon A. Grubaugh, an intoxicated employee of the Kansas State Grain Inspection Department. Plaintiff filed an action against both the employee and the employer. The employee settled with the plaintiff and was dismissed from the action. Plaintiff claims because the State's supervisors: (1) failed to properly supervise the conduct of its employee; (2) allowed the employee to become intoxicated while at work; and (3) allowed the employee to leave work early knowing he was intoxicated, the State has breached its duty to the plaintiff. The State filed a motion for summary judgment which was granted by the Wyandotte County District Court. Plaintiff appealed. We affirm the grant of summary judgment determining that because, absent special circumstances, a private employer would owe no duty to a third person for tortious acts of an employee who, after consuming alcohol on the em-

ployer's premises, leaves the premises and, while off-duty, injures the third person, the State likewise owes no duty to plaintiff.

During working hours on the afternoon of June 18, 1985, Grubaugh, in violation of state and federal law, consumed several cans of beer while seated in his car which was parked in a lot leased by the State. After obtaining permission to leave work early from his supervisor, Earl Sprung, Grubaugh left work at 3:00 p.m.

At approximately 3:15 p.m., Meyers was injured when his vehicle, traveling eastbound on a state highway, was struck head-on by a westbound vehicle owned and driven by Grubaugh. At the time of the accident, Grubaugh was intoxicated and acting outside the scope of his employment.

In his second amended petition against Grubaugh and the State, Meyers alleged the State was liable because its supervisors at the State Grain Inspection Department:

(1) failed to properly supervise the conduct of its employee.

(2) allowed Grubaugh to become intoxicated while under its control in violation of K.S.A. 41-719, K.S.A. 75-2949f(m) and (p), and 7 C.F.R. §§ 800.186 and § 800.195 (1987).

(3) allowed Grubaugh to leave work early at which time it was known Grubaugh was intoxicated.

The State filed a motion for summary judgment alleging immunity under the Kansas Tort Claims Act, K.S.A. 75-6101 et seq. The district court judge granted the State's motion for summary judgment as a matter of law because: (1) a private party would not be liable under these facts; (2) the State is not liable to plaintiff for the failure of its agents to enforce laws which prohibit drinking on duty; (3) Grubaugh was acting outside the scope of his employment at the time of the accident; and (4) the State was immune under the discretionary function exception to the Kansas Tort Claims Act.

Summary judgment is proper if no genuine issue of fact remains, giving the benefit of all inferences which may be drawn from the admitted facts to the party against whom judgment is sought. A trial court, in ruling on motions for summary judgment, is required to search the record and determine whether issues of material fact exist. When summary judgment is challenged on

appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. *Hunt v. Dresie*, 241 Kan. 647, 652-53, 740 P.2d 1046 (1987). Reading the record in the light most favorable to Meyers, we must assume that the State knew that Grubaugh had consumed beer during working hours and knew that he was intoxicated when he was allowed to leave work early.

Initially, we must determine whether the State of Kansas owed plaintiff a duty to supervise and control its intoxicated employee, so as to avoid foreseeable harm to others. The liability of the State for tortious conduct is governed by the Kansas Tort Claims Act. Under the Act, liability is the rule, subject to the statutory exceptions. Before reaching any of the exceptions, we must consider K.S.A. 75-6103(a), which provides:

"Subject to the limitations of this act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state."

Pursuant to K.S.A. 75-6103(a), the State and its entities as employers bear no greater liability than would a private employer under the laws of this state. The Act creates no new causes of action, and recovery under the Act requires the plaintiff to raise a recognized tort action and prove the essential elements of duty, breach of that duty, and injury proximately resulting from the breach. *Cansler v. State*, 234 Kan. 554, 558, 675 P.2d 57 (1984).

Meyers claims that K.S.A. 41-805, which provides that any owner of any premises who knowingly allows alcohol to be consumed in violation of the Kansas Liquor Control Act shall be liable for the maintenance of a common nuisance, imposes civil liability upon the private owner of the premises to a third party who is injured by an individual who illegally consumed the alcohol. A similar claim under a different statute was rejected by this court in *Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731 (1985).

In *Ling*, a Missouri store vendor illegally sold alcohol to a minor who became intoxicated and caused injury to Ling in an automobile accident which occurred in Kansas. The majority of

this court declined to impose third-party civil liability on the alcohol vendor. The majority reasoned that at common law, a plaintiff injured by the acts of an intoxicated person has no redress against the seller or furnisher of intoxicating liquor either on the theory that the dispensing of liquor constituted a direct wrong or on a negligence theory. The majority opined that the question of civil liability was best reserved for legislative action, even though the vendor's act violated K.S.A. 41-715, which prescribes criminal penalties for providing alcohol to persons unlikely to be able to handle the consumption of alcohol. After *Ling* was decided, the Kansas Legislature declined to impose civil liability on a private vendor of alcohol when a violation of K.S.A. 41-715 resulted in injuries to a third party. The district court here, following our reasoning in *Ling*, correctly determined that K.S.A. 41-805 also does not impose civil liability on the State because it maintained a public nuisance.

Meyers also claims that statutes, state departmental regulations, the State's contract with the federal government, and the common law impose third-party liability on the State, as an employer, for the torts of one of its intoxicated employees. Meyers points out that the State is under a statutory duty to ensure that employees do not become intoxicated while at the workplace. K.S.A. 41-719 provides that no person shall drink or consume alcohol while on any property owned by the State. For additional support, Meyers cites the general rule that public officers and employees have a duty to supervise their employees. 63A Am. Jur. 2d, Public Officers and Employees § 301, p. 885. In addition, under its contractual agreement with the federal government, pursuant to 7 C.F.R. § 800.195(f)(4), the State is responsible for the direct supervision of its employees and for insuring that employees neither report for duty in an intoxicated or drugged condition nor consume intoxicating beverages or incapacitating drugs while on duty.

Meyers concedes that, at most, the contract, the regulations, and statutes impose a duty upon the employer to supervise employees and ensure that they do not become intoxicated on the premises. The issue then becomes, to whom is this duty owed? Clearly, the purpose of the policies, regulations, and statutes is to ensure the quality of the work products of the

720

employees, to protect the safety of the workplace, and to enforce the public policy against the consumption of alcoholic beverages on property owned or leased by the State.

Meyers does not claim that the federal regulations and the State statutes recognize a duty to a third party whom the employee may injure while outside the scope of his employment. Rather than liability to a third party stemming from the violation of one of the regulations or statutes, Meyers contends that the employer's duty to the general public is created by engrafting upon the regulations or statutes additional principles of modern common-law negligence, specifically the Restatement (Second) of Torts §§ 315, 317, and 319 (1963).

Section 315 provides that there is no duty to control the conduct of a third person to prevent him from causing physical harm to another unless a "special relationship" exists between the actor and the third person or the actor and the injured party.

Section 317 recognizes that the "special relationship" of employer and employee imposes a duty on the employer to exercise control over the employee acting outside the scope of employment under limited circumstances. Section 317 states:

"§ 317. Duty of Master to Control Conduct of Servant

"A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, and

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising such control."

Comment (b) to § 317 states: "A master is required to police his own premises . . . . On the other hand, the master as such is under no peculiar duty to control the conduct of his servant while he is outside of the master's premises, unless the servant is at the time using a chattel entrusted to him as servant."

This duty of the employer to control an intoxicated employee

acting outside the scope of his employment was discussed in *Pursley for Benefit of Clark v. Ford Motor*, 462 N.E.2d 247 (Ind. App. 1984). There, the plaintiff sought recovery from an employer who allowed an employee to drink clandestinely on the job. After completing his shift and leaving the company premises, the intoxicated employee lost control of his car and killed the plaintiff's decedent. The court held that because the accident occurred off the premises and the employee was not using the employer's chattel, § 317 did not apply and the employer had no duty to the injured party. 462 N.E.2d at 251. See also *Pilgrim v. Fortune Drilling Co., Inc.*, 653 F.2d 982 (5th Cir. 1981) (employer not liable under § 317 to injured motorist for allowing employee to drive home in exhausted state). The holding in *Pursley* is also applicable to the facts of this case. Grubaugh was neither upon the employer's premises at the time of the accident nor was he "using a chattel of the master."

Section 319 expands upon the "special relationship" of employer and employee of § 317 and imposes a duty on those in charge of a person having dangerous propensities, providing:

"One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

This section of the Restatement has been relied upon recently by another jurisdiction to impose liability upon an employer for injury caused to a third party by an intoxicated employee. In oral argument, appellant argued that similar reasoning in *Clark v. Otis Engineering Corp.*, 633 S.W.2d 538 (Tex. Civ. App. 1982), *aff'd* 668 S.W.2d 307 (Tex. 1983), has been adopted by this court in *Cansler v. State*, 234 Kan. 554, and *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093 (1986), and that these cases are dispositive of the issues here. We disagree.

In *Clark*, Robert Matheson, a machinist employed by Otis, had a history of drinking while on duty. One day, while working, Matheson went to his car in the parking lot and consumed alcohol. Fellow workers told Matheson's supervisor that Matheson was inebriated and that the supervisor should "get him off the machine." Prior to the end of his shift, the supervisor ordered Matheson to go home and accompanied Matheson to his car. A

few minutes after leaving the workplace, Matheson's car collided with another car, killing Matheson and the two occupants of the other car. Plaintiffs, widowers of the occupants of the other car, sued Otis. The employer, Otis, moved for summary judgment contending that it had no duty to restrain its employee, Matheson, or control his actions while he was off duty, off the premises, and driving his own vehicle. The trial court granted Otis summary judgment and plaintiffs appealed.

The Texas Court of Appeals reversed the trial court's grant of summary judgment and based its reasoning on § 319 of the Restatement, quoted above. The court reasoned that once an employer *takes charge* of an obviously intoxicated employee, the employer has a duty to act as a reasonable and prudent employer would under same or similar circumstances. The court held that whether the employer had "taken charge" of the intoxicated employee was a jury question; therefore, the trial court's grant of summary judgment was improper. The Texas Court of Appeals distinguished other cases by stressing the alleged assumption of control by the employer over an obviously intoxicated employee likely to be dangerous to others. The Supreme Court of Texas affirmed and denied rehearing, 668 S.W.2d 307. *Clark* is distinguishable from the case at bar because here there are no facts which show that the employer took charge or assumed control over the intoxicated employee.

Similarly, *Cansler* and *Fudge* are distinguishable. In *Cansler* the plaintiff, a Bonner Springs police officer, was shot attempting to apprehend individuals in a vehicle the officer had observed committing a moving violation. The officer sued for injuries caused by the State's employees' failure to properly warn him that armed and dangerous convicts had escaped from the Kansas State Penitentiary. *Cansler* involved the application of § 319 of the Restatement (Second) of Torts. We held that, because of the special relationship existing between the State, as custodian of prison inmates, and the inmates, the State was under a common-law duty to use reasonable care to prevent inmates from doing bodily harm to others, since the State knew these inmates would be likely to cause harm. 234 Kan. at 560. However, the common-law duty imposed upon the State was inherent in the relationship itself, namely the duty to confine the seven esca-

pees, all serving life terms. Moreover, when these dangerous criminals escaped from the state penitentiary, the State had a duty to alert area residents by a prearranged signal and to notify area law enforcement officers promptly through the usual police communications channels. No such duty is inherent in the employer-employee relationship. Therefore, *Cansler* is inapplicable.

*Fudge* involved a wrongful death and survival action against a city arising from an automobile accident when police allowed an intoxicated driver to leave a tavern parking lot and proceed on the public highway. The police were subject to a Kansas City Police Department internal order (General Order 79-44), which required that an individual incapacitated by alcohol and likely to do injury to himself or others "will be taken into protective custody." 239 Kan. at 372-73. The police had been summoned to a Kansas City bar to deal with a disturbance. Even though the officers observed the intoxicated condition of one of the bar's patrons, they ordered him to leave. Then, as he drove away, the police observed him in a near accident with another police car, yet allowed him to proceed. Shortly afterwards, the car driven by the intoxicated patron struck a van driven by Fudge. Fudge died as a result of the accident.

This court found a duty to the injured party based on the Restatement (Second) of Torts § 324A (1963) which provides:

"Liability to Third Person for Negligent Performance
of Undertaking
"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

That section clearly does not apply here. The State had not undertaken to render any services to its employee, Grubaugh, that it should have realized as necessary for the protection of others. Nor was the State subject to internal mandates setting out the procedure for dealing with an intoxicated employee.

Courts have recognized limited instances in which an employer may be held liable for injuries to a third party caused by an employee acting outside the scope of employment. One exception concerns off-duty employees who are either on the employer's premises or using a chattel owned by the employer. *McArthur Jersey Farm Dairy, Inc. v. Burke*, 240 So. 2d 198 (Fla. Dist. App. 1970) (employer potentially liable for employee's reckless driving on employer's premises); *Marusa v. District of Columbia*, 484 F.2d 828 (D.C. Cir. 1973) (employer potentially liable for gunshot injury inflicted by employee required to carry gun at all times). The second exception occurs when the employer voluntarily and knowingly assumes a duty to control the employee. *Clark v. Otis Engineering Corp.*, 633 S.W.2d 538 (employer affirmatively takes charge of intoxicated employee). A third exception results when an employer is negligent in employing or in retaining an employee who the employer knew or should have known was incompetent or unfit. *Plains Resources, Inc. v. Gable*, 235 Kan. 580, 682 P.2d 653 (1984) (court recognized employer in such cases liable for own primary negligence). None of these exceptions apply to this case.

Actionable negligence must be based on a breach of duty. Existence of duty is a question of law. *Durflinger v. Artiles*, 234 Kan. 484, 488, 673 P.2d 86 (1983). The district court's grant of summary judgment was correct. Neither statutory nor general principles of negligence impose a duty upon the employer to the injured party in this case. Absent special circumstances, a private employer owes no duty to a third party for tortious acts of an employee who, after consuming alcohol on the employer's premises, leaves the employer's premises and while off duty injures the third party. Where no duty would be imposed upon a private employer, no duty will be imposed upon the State under the Kansas Tort Claims Act.

Because of our decision on this issue, we do not reach the other issues raised. Affirmed.