**Brian RAUCK, Appellant**
**(Defendant Below),**

v.

**Michael HAWN, Appellee**
**(Plaintiff Below),**

**and**

**Jerome Schafer, Jr., Appellee**
**(Defendant Below).**

**No. 39A01–9003–CV–108.**

Court of Appeals of Indiana,
First District.

Dec. 27, 1990.

Peter G. Tamulonis, Donald L. Dawson, John B. Drummy, Kightlinger & Gray, Indianapolis, for appellant.

Edwin S. Sedwick, Sedwick & Sedwick, and Ernest W. Smith, Jeffersonville, for appellee.

ROBERTSON, Judge.

Brian Rauck, defendant below, appeals the denial of his motion for summary judgment and the entry of summary judgment in favor of co-defendant, Jerome Schafer, Jr.

We affirm.

Plaintiff Michael Hawn sustained injury on the morning of May 15, 1988 when defendant Scott Fleming, the brother of a friend with whom Hawn had been camping, drove the pickup truck in which Hawn was sleeping into a tree. Over the prior twelve hours, Fleming had consumed alcohol with Hawn, his brother Mike, and the other co-defendants, among them, Fleming's buddies, appellant Rauck and Jerome (Chip) Schafer. Hawn alleges in his complaint that Rauck and Schafer were negligent per se in that they "furnished" alcohol to Fleming in violation of IND.CODE 7.1–5–7–8 or I.C. 7.1–5–10–15 and their negligence was a proximate cause of his injuries.

Both Rauck and Schafer moved for summary judgment on the ground that the undisputed facts established they did not furnish alcohol to Fleming within the meaning of the statutes. The trial court agreed with Schafer but found a genuine issue of material fact concerning Rauck's conduct.

Rauck characterizes the undisputed evidence as showing that he, like Schafer, acted in concert with Fleming to obtain and drink intoxicants, specifically whiskey and beer. Hence, he argues that he should be entitled to a summary judgment on the same basis as Schafer. In the alternative, if the record shows his conduct to be legally distinguishable on the ground that he affirmatively supplied whiskey to the others, Rauck challenges the summary judgment in favor of Schafer by pointing to facts which he contends establish Schafer likewise exercised possession and control over the beer consumed by Fleming such as to preclude a determination that Schafer did not furnish alcohol to Fleming. Lastly, Rauck maintains that as a matter of law, his acts could not have been the proximate cause of Hawn's injuries since the events which transpired were not reasonably foreseeable by him and were too remote. Should we determine the trial court correctly granted Schafer's motion for summary judgment, appellee Hawn argues that Rauck should not now be permitted to

name Schafer as a nonparty pursuant to I.C. 34–4–33–10(c).

 Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions, affidavits and testimony show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). Summary judgment deprives the non-moving party of the right to a trial; hence, the burden is upon the movant to establish that no genuine issue of fact exists. *McKenna v. City of Fort Wayne* (1981), Ind.App., 429 N.E.2d 662. A fact issue is genuine if it cannot be completely resolved by reference to undisputed facts. *American Family Mutual Ins. Co. v. Kivela* (1980), Ind.App., 408 N.E.2d 805. Thus, summary judgment is inappropriate where the information before the court reveals a good faith dispute as to the inferences to be drawn from the evidence. *Sink & Edwards, Inc. v. Huber, Hunt & Nichols, Inc.* (1984), Ind.App., 458 N.E.2d 291. If after considering the factual materials, any doubt remains as to the existence of a genuine issue of material fact, summary judgment is inappropriate. *Carrell v. Ellingwood* (1981), Ind.App., 423 N.E.2d 630.

In Indiana, common law liability for negligence in the provision of alcoholic beverages is restricted to cases involving the breach of a statutory duty. *Gariup Construction Co. v. Foster* (1988), Ind., 519 N.E.2d 1224, 1227–28. Indiana Code 7.1–5–7–8 and I.C. 7.1–5–10–15 identify the specific conduct, proof of which will provide evidence of negligence. *Picadilly, Inc. v. Colvin* (1988), Ind., 519 N.E.2d 1217, 1219. However, a person may not be held civilly accountable for furnishing, i.e., bartering, delivering, selling, exchanging, providing or giving away, an alcoholic beverage pursuant to these sections unless the person furnishing the alcohol had actual knowledge that the person to whom it was being furnished was visibly intoxicated at the time the alcoholic beverage was furnished, and, the intoxication of the person to whom the alcoholic beverage was furnished was a proximate cause of the death, injury, or damage alleged in the complaint. I.C. 7.1–5–10–15.5.

 Indiana Code 7.1–5–10–15 makes it "unlawful for a person to sell, barter, deliver, or give away an alcoholic beverage to another person who is in a state of intoxication if the person knows the other person" to be intoxicated, while I.C. 7.1–5–7–8 prohibits the reckless sale, barter, exchange, provision or furnishing of an alcoholic beverage to a minor. In construing these sections, we have held that one who buys a drink for an intoxicated friend the donor knows to be intoxicated may be found to have engaged in the conduct proscribed by I.C. 7.1–5–10–15. *Ashlock v. Norris* (1985), Ind.App., 475 N.E.2d 1167, *trans. denied.* On the other hand, a person who merely loans money he knows will be used to purchase alcohol but neither possesses nor controls the liquor itself, does not furnish alcohol to a minor within the meaning of I.C. 7.1–5–10–8. *Lather v. Berg* (1988), Ind.App., 519 N.E.2d 755. Similarly, one minor cannot be said to have furnished alcohol to another if the minors acquire possession of the liquor simultaneously and exercise joint control over it thereafter. *Id.; see also, Bowling v. Popp* (1989), Ind.App., 536 N.E.2d 511. In each case where it has been held that a defendant furnished alcohol to another for his or her use in violation of the statutes, the supplier was "the active means" by and through which the liquor was placed in the custody and control of the intoxicated person. *Lather,* 519 N.E.2d at 761.

 The record indicates that Rauck, Schafer, and Fleming, all minors, encountered Fleming's brother Mike at a local convenience store. Mike agreed to purchase a case of beer which ultimately was shared by the three minors. Scott Fleming did not appear to have had anything to drink at that time. Fleming and Rauck testified that sometime later, after the threesome cruised the riverfront and consumed some of the beer, the three agreed that they wanted whiskey. Schafer says there was no agreement to buy the whiskey; it was Rauck's idea to get it and Rauck bought it. Each of the deponents

testified that Rauck approached an individual outside the liquor store, asked the stranger if he would purchase a fifth of whiskey for him, and gave the stranger the money to make the purchase. The stranger then brought the bottle back to the car and handed it to Rauck. Rauck passed the bottle to Fleming and Schafer.

There is thus a dispute in the record over whether the three minors agreed to jointly acquire the whiskey, which must be resolved adversely to Rauck for purposes of summary judgment. There is no dispute that Rauck actively solicited assistance to purchase the liquor, paid for it himself, and exercised possession and control over it before offering it to Fleming. The case for a statutory violation is therefore even more compelling on the facts least favorable to Rauck than in *Ashlock* where the defendant purchased the drink for his intoxicated friend. Rauck not only devised the plan and purchased the whiskey, admittedly through an intermediary, but he also exercised possession and control over the bottle once it had been acquired. Moreover, the facts least favorable to Rauck suggest that Rauck exercised *exclusive* control over the bottle once he acquired it, at least until the group stopped at White Castle to get something to eat. A jury could therefore find that Rauck was the active means by and through which the liquor was placed in the custody and control of Fleming, who at that point was intoxicated.

■■■■ Schafer's role in the acquisition of the whiskey is limited to his expressed desire to procure it with the others. An agreement to buy liquor with the intoxicated person who ultimately causes harm is not the kind of affirmative conduct prohibited by the statutes. *Lather*, 519 N.E.2d 755; *Bowling*, 536 N.E.2d 511.

■■■■ Rauck contends that the facts least favorable to Schafer establish that Schafer supplied the beer they consumed before purchasing the whiskey.[1] However, there is no dispute in the record that Fleming did not appear to have consumed any alcohol before the beer was purchased. And, at best, the unfavorable evidence shows nothing more than joint acquisition and participation by Fleming and Schafer which, as Rauck argues, does not constitute the statutorily proscribed conduct.

Rauck points to the evidence that Schafer drove the car to the convenience store where Fleming ran into his brother, and that some or all of the beer was placed in Schafer's trunk. He surmises that Schafer had the only key. The uncontested evidence establishes that each of the minors consumed some beer in the car after it was purchased. Fleming testified that he had a twelve-pack of beer beside him on the seat; Schafer testified that they had twelve beers in front with them; and Rauck stated that the beer was in the car and that all three of them opened their first beers in the parking lot of the convenience store. There is no evidence that once some of the beer had been placed in the trunk, Schafer actually controlled Fleming's access to it. The fact that Schafer did the driving, of itself, does not support any greater inference than that he contributed in that way to their joint venture.

■■■■ Accordingly, we agree with the trial court that Schafer cannot be held liable for negligence in the provision of alcoholic beverages to Fleming. This determination means that the trier of fact cannot now assign fault to Schafer as a nonparty, for a culpable nonparty must be capable of being subjected to civil liability. *Cornell Harbison Excavating, Inc. v. May* (1989), Ind., 546 N.E.2d 1186, 1187. Final percentages of fault may be allocated only to a plaintiff, a defendant, and any person who is a nonparty. *Bowles v. Tatom* (1989), Ind.App., 546 N.E.2d 1188, 1190. "Nonparty" means a person who is, or may be, liable to the claimant in whole or in part. I.C. 34-4-33-2. *Accord Faust v. Thomas* (1989), Ind.App., 535 N.E.2d 164; *Hill v.*

---

1. Rauck maintains that he has standing to challenge the summary judgment in favor of Schafer, and cites as authority *Bowles v. Tatom* (1989), Ind., 546 N.E.2d 1188. Although we are reluctant to view the *Tatom* decision as determinative of the standing question, we have decided to rule upon the merits of Rauck's challenge to the summary judgment in Schafer's favor nonetheless, because Hawn has not chosen to contest the standing issue.

*Metropolitan Trucking, Inc.* (N.D.Ind., 1987), 659 F.Supp. 430.

██ Lastly, Rauck maintains that as a matter of law, a jury could not conclude that his actions were the proximate cause of Hawn's injuries. He cites the evidence that Fleming did not operate a vehicle in his presence and did not have the keys to his father's vehicle which his brother had driven to the campsite where the three minors ultimately ended up; that Mike Fleming would not let his brother leave the campsite with Rauck and Schafer; and that the accident occurred some four or five hours after Rauck and Schafer left Fleming off with his brother at the campsite.

██ Our courts have repeatedly recognized the foreseeable risk of harm associated with the furnishing of alcoholic beverages to a visibly intoxicated driver. *See, e.g., Welch v. Railroad Crossing, Inc.* (1986), Ind.App., 488 N.E.2d 383, 390. Indeed, in *Picadilly, Inc. v. Colvin,* 519 N.E.2d 1217, without any independent evidence that Picadilly employees knew Brewer, a patron, would be driving, the Indiana Supreme Court found injury from an alcohol-related accident to be forseeable as a matter of law. *Id.* at 1220. In *Elder v. Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847, the supreme court held that a complaint alleging a druggist sold liquor to a boy 17 years of age who drank the liquor, drove an automobile and as a result was involved in the accident in which the plaintiff's ward was injured sufficiently alleged the element of proximate cause to state a cause of action. These cases are consistent with the general principle of negligence law, applied in this state, that an actor need not foresee the exact manner in which harm occurs, but must, in a general way, foresee the injurious consequences of his act. *Hobby Shops, Inc. v. Drudy* (1974), 161 Ind.App. 699, 708, 317 N.E.2d 473, 478.

In any event, the present case does not present reason for removing the issue of proximate cause from the jury. Fleming became intoxicated in the presence of Rauck, consumed what was believed to be valium [2] given him by Schafer in Rauck's presence, and passed out in the car before he had even eaten the White Castle sandwich Schafer bought him. Rauck had known Fleming to become extremely intoxicated in the past. At the time Rauck furnished Fleming with the whiskey, the threesome had already encountered Fleming's brother in the Fleming family pickup truck and had already formed the plan to join Mike Fleming and his friends at their campsite. Rauck knew it was likely that Fleming's brother would have the truck at the campground because Mike Fleming and his friends had already set up camp when they encountered the minors at the convenience store and were returning to the campsite for a party. When the three minors arrived at the campsite, the pickup truck was parked there. The keys were in the truck. Some five hours later, after Fleming had driven the truck to get cigarettes and collided with a tree, he had a blood alcohol content of .13%.

Hence, there is evidence in the record from which a reasonable jury could find that Rauck furnished Fleming with alcohol knowing Fleming to be intoxicated and in the exercise of reasonable care could have anticipated that Fleming might cause injury to himself or others. Such a jury might also reason, given the level of Fleming's alcohol consumption, that the risk of harm associated with Rauck's actions would not diminish any faster than the alcohol in Fleming's blood stream could dissipate.

For these reasons, we conclude that the trial court correctly denied Rauck a summary judgment. The summary judgment in favor of Schafer is affirmed.

Judgment affirmed.

BAKER, J., concurs.

SULLIVAN, J. concurs in result.

2. No question has been raised or argued that the valium is a contributing factor in the cause of action.