[No. 25448-1-I.   Division One.   August 26, 1991.]

DENNIS TALLARITI, ET AL, *Appellants*, v. GERALD J.
KILDARE, ET AL, *Defendants*, DELTA PLUMBING
AND HEATING, INC., ET AL, *Respondents*.

*Samuel Pemberton,* for appellants.

*Kenneth S. McEwan* and *Betts, Patterson & Mines P.S.; D. Michael Reilly* and *Lane Powell Spears Lubersky,* for respondents.

COLEMAN, J. — Dennis and Karrie Tallariti appeal an order granting summary judgment to Delta Plumbing and Heating, Inc., and to Amurcon, Inc., and dismissing the Tallaritis' claims for damages. The Tallaritis (hereinafter Tallariti) argue that the trial court erred when it dismissed their claims because they had established a prima facie negligence cause of action. We affirm.

On July 3, 1986, Gerald Kildare was employed by Delta, which was the plumbing subcontractor on a development known as Surprise Lake Village. Amurcon was the general contractor. After quitting work at 12 or 12:30 p.m., Delta

employees, along with others employed on the project, pooled their money to buy two kegs of beer. Kildare recalled drinking eight 12-ounce cups of beer on the jobsite.

At approximately 6:30 p.m., after having left the jobsite in his truck, Kildare was traveling northbound on State Route 161. Suddenly, Kildare's truck crossed the center line and struck a vehicle driven by Dennis Tallariti. Tallariti was seriously injured. A blood sample taken approximately 2 hours after the accident showed Kildare's blood alcohol content to be .22 percent. Kildare later was found guilty of vehicular assault.

On July 28, 1986, Tallariti filed a complaint against Kildare, Delta, the owners of Delta, and several John Doe corporations. On December 29, 1989, the trial court granted orders of summary judgment to Delta and Amurcon and dismissed Tallariti's claims against them.[1] This appeal followed.

The sole issue on appeal is whether the trial court erred when it dismissed Tallariti's claims and granted summary judgment in favor of Delta and Amurcon.

Under CR 56(c), summary judgment can be granted only if the pleadings, depositions, affidavits, and admissions on file demonstrate that there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The court considers all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Wilson*, at 437. If, from all the evidence, reasonable persons could reach but one conclusion, the motion should be granted. *Wilson*, at 437. When the trial court decided an issue on an order of summary judgment, the appellate court engages in the same inquiry as the trial court. *Wilson*, at 437.

The essential elements of a negligence action are as follow: (1) the existence of a duty owed to the complaining party; (2) a breach of that duty; (3) a resulting injury; and

---

[1]The other parties settled with Tallariti prior to the perfection of this appeal.

(4) a proximate cause between the breach and the injury. *Christen v. Lee*, 113 Wn.2d 479, 780 P.2d 1307 (1989). The existence of a duty is a question of law. *Blenheim v. Dawson & Hall, Ltd.*, 35 Wn. App. 435, 442, 667 P.2d 125, *review denied*, 100 Wn.2d 1025 (1983). In general, courts will find a duty where reasonable persons would recognize it and agree that it exists. W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 53, at 359 (5th ed. 1984). Defendants breach their duty if they fail to exercise reasonable or ordinary care. *Gordon v. Deer Park Sch. Dist. 414*, 71 Wn.2d 119, 122, 426 P.2d 824 (1967).

The doctrine of proximate cause entails two elements: (1) cause in fact; and (2) legal causation. *Christen*, at 507. Legal causation "concerns whether liability *should* attach as a matter of law given the existence of cause in fact." *Christen*, at 508. The Supreme Court has noted that "the question of 'whether liability should attach is essentially another aspect of the policy decision which we confronted in deciding whether the duty exists.'" *Hartley v. State*, 103 Wn.2d 768, 780, 698 P.2d 77 (1985) (quoting *Harbeson v. Parke-Davis, Inc.*, 98 Wn.2d 460, 476, 656 P.2d 483 (1983)).

Tallariti argues that Delta and Amurcon should be held liable for his injuries based upon their own negligence for failing to control the jobsite.[2] His argument essentially is that because the party took place on the jobsite, the general contractor and subcontractor had an obligation to control the employees' activities, even if the keg party was a purely social event. He has failed to show, however, that he is a member of the class of persons to whom the employer's common law duty to prohibit drinking on the job was owed.

The Washington case most like this one is *Blenheim v. Dawson & Hall, Ltd.*, *supra*. In *Blenheim*, several employees of a subcontractor, PPS, held a Christmas party at a construction site on which Dawson was the general con-

---

[2]Tallariti stresses that he is not claiming that Delta and Amurcon are liable based upon their status as social, commercial or quasi-commercial hosts; employer violations of statutory safety regulations; or any imputed liability for Kildare's negligence.

tractor. Blenheim was paid to dance at the party. She claimed that after dancing and drinking at the party, some of the PPS employees struck and raped her and left her unconscious. Blenheim sued Dawson, PPS, and seven unnamed individuals. She argued that Dawson and PPS were vicariously liable for the actions of the PPS employees and were directly negligent for violating safety regulations and failing to provide security and supervision. In answers to interrogatories, the corporate defendants acknowledged that their employees, including a PPS foreman, were at the party but claimed that they did not sponsor the party and were not aware of it when it took place. The corporate defendants then filed a motion to dismiss for failure to state a claim upon which relief can be granted under CR 12(b)(6). The trial court granted the motion and the Court of Appeals affirmed.

The appellate court first found as a matter of law that the defendant corporations were not liable to Blenheim under the theory of vicarious liability. Blenheim also argued, however, that the defendant corporations were directly negligent. She claimed that they had breached a duty established by WISHA and OSHA safety rules when they allowed alcohol on the construction site. If, however, the violation of a regulation is to be considered in determining liability, the person injured must be a member of the class and the injury must be the sort against which the regulations were designed to protect. *Blenheim*, at 441; *see also* Restatement (Second) of Torts § 286 (1965). WISHA and OSHA regulations were designed to ensure safe working conditions for employees. *Blenheim*, at 441. Blenheim was not an employee, and her injuries were not the sort that the regulations were designed to prevent. *Blenheim*, at 441.

Blenheim also argued that the defendant corporations were directly negligent because they breached a common law duty to maintain security and provide supervision of the party, which caused her injury. The court noted that "[a]bsent a special relationship between the parties, one does not have a duty to protect another from the criminal

acts of a third person." *Blenheim*, at 442. The court found that Blenheim had failed to show that the defendants owed her a duty to provide security to prevent the type of harm that she suffered. *Blenheim*, at 443.

■ Similarly, Tallariti has failed to show that the respondents owed him a duty to control the jobsite to prevent the type of harm that he suffered. Even if the affidavits of Tallariti's experts were sufficient to establish that the general industry policy is to prohibit the drinking of alcohol on construction sites, the policy against drinking on the job, like OSHA and WISHA regulations, is for the protection of employees. *See Blenheim*, at 441. Because the duty to prohibit drinking on the job was not owed to Tallariti, the respondents are not liable to Tallariti for breaching that duty.

■ Tallariti argues that *Blenheim* is distinguishable because the acts of the employees of the contractors in *Blenheim* were intentional criminal acts. The rule that one does not have a duty to protect another from criminal acts of a third person, however, is consistent with the general rule that, absent a special relationship, one does not have a duty to protect another from any type of acts of a third person. *See* Restatement (Second) of Torts §§ 315-320. The duty of a master to control the conduct of his servant is specifically addressed in § 317 of the Restatement:

A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
    (a) the servant
        (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
        (ii) is using a chattel of the master, and
    (b) the master
        (i) knows or has reason to know that he has the ability to control his servant, and
        (ii) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 317. Thus, unless the employee is using a chattel of the master, an employer has a

duty to protect third persons only from acts of an employee that are committed while the *employee* is on the employer's premises.[3] Restatement (Second) of Torts § 317(a).

Tallariti argues that it was respondents' failure to control their employees on the jobsite that caused his injuries. Kildare, however, was miles from the jobsite when Tallariti's injuries occurred. Delta and Amurcon, therefore, owed no duty to Tallariti. *See* Restatement (Second) of Torts § 317.

Tallariti further argues that precedent supports the imposition of liability in this case. Most cases on which he relies, however, state only general negligence principles that do not address whether liability should attach in precisely this situation. Furthermore, Tallariti would have this court ignore the cases involving furnishers of alcohol in which the courts have been loath to impose a duty upon third persons for injuries caused by another's intoxication. *See Burkhart v. Harrod*, 110 Wn.2d 381, 755 P.2d 759 (1988).

Furnishers of alcohol generally are not liable for damages caused by the intoxication of the persons they serve. *Burkhart*, at 383; *Halvorson v. Birchfield Boiler, Inc.*, 76 Wn.2d 759, 458 P.2d 897 (1969). Furnishers are liable only if the alcohol is served to one who is obviously intoxicated, helpless, or in a special relationship to the furnisher. *Burkhart*, at 383; *Dickinson v. Edwards*, 105 Wn.2d 457, 461, 716 P.2d 814 (1986). Tallariti offers no persuasive arguments why the duty owed by one who does not furnish alcohol should be greater than the duty owed by one who does furnish it.

Tallariti claims that the precedent set by *Robertson v. LeMaster*, 171 W. Va. 607, 301 S.E.2d 563 (1983) also supports the imposition of liability in this case. In *Robertson*, N&W Railway Company required its employee, Tony LeMaster, to work 27 hours at hard labor without rest, despite

---

[3]The comments to section 317 give examples of how the rule applies. A master is required to exercise his authority to prevent his servant from indulging in games in the factory yard over the lunch hour that present an unreasonable risk of harm to persons outside the factory premises. Restatement (Second) of Torts § 317, comment *b*. The master, however, is not required to exercise control over his employees while they are on the public streets. Restatement (Second) of Torts § 317, comment *b*.

his several requests to be permitted to stop. When he was finally permitted to stop working, the company did not provide him with sleeping quarters to rest before he drove home. Rather, another employee of the company drove LeMaster to his car. During the 50-mile drive to his home, LeMaster fell asleep and his car smashed into the back of the Robertson vehicle. Robertson sued LeMaster's employer based upon its own negligence of requiring LeMaster to work long hours, driving him to his vehicle, and sending him out on the highway in an exhausted condition. The court held that "[w]hen such [an] affirmative action is present, liability may be imposed regardless of the existence of a relationship between the defendant and the party injured by the incapacitated individual." *Robertson,* at 613; *see also* Restatement (Second) of Torts § 321 (an actor who has affirmatively acted and then realizes or should realize that he has created an unreasonable risk of harm to another is under a duty to exercise reasonable care to prevent the risk from taking effect); *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307 (Tex. 1983) (employer has duty to prevent employee from causing unreasonable risk of harm to others when, because of employee's incapacity, employer exercises control over employee).

What distinguishes *Robertson* from this case is the absence of an affirmative act by Delta or Amurcon. Neither company encouraged Kildare to drink or to drive his vehicle while intoxicated. Furthermore, neither Delta nor Amurcon received any benefit from Kildare's presence at the keg party. *See Dickinson v. Edwards, supra* at 468 (a plaintiff may recover from a banquet-hosting employer if, among other things, the banquet was beneficial to the employer). Neither company hosted the party nor furnished the beer. *See Dickinson,* at 468.

Precedent, therefore, does not support holding Delta or Amurcon liable for Tallariti's injuries. Neither Delta nor Amurcon owed a duty to Tallariti.

Delta asks for attorney fees on appeal. Delta, however, was not awarded attorney fees below and has not presented arguments supporting its request for fees in its brief on appeal. Its request for attorney fees, therefore, is denied. *See* RAP 18.1; *see also West Coast Stationary Eng'rs Welfare Fund v. Kennewick*, 39 Wn. App. 466, 477, 694 P.2d 1101 (1985).

The decision of the trial court granting summary judgment to Delta and Amurcon is affirmed.

GROSSE, C.J., and SCHOLFIELD, J., concur.

Review denied at 118 Wn.2d 1012 (1992).