The ESTATE OF Timothy Lee CUM-MINGS by Debra Christmas Cummings HECK, Executrix, Debra Christmas Cummings Heck, Individually, and William Thomas Donald Cummings, by Next Friend, Appellants–Plaintiffs,

v.

PPG INDUSTRIES, INC., et al., Appellee–Defendant.

Murlin D. FRANKLIN, III, Laura Franklin, Appellants–Plaintiffs,

v.

PPG INDUSTRIES, INC., et al., Appellee–Defendant.

No. 82A01–9408–CV–272.

Court of Appeals of Indiana.

May 31, 1995.

Rehearing Denied Aug. 22, 1995.

Stephen Hensleigh Thomas, Statham, Johnson & McCray, Evansville, Mark E. Neff, Mark E. Neff Law Office, Boonville, for appellants.

Patrick A. Shoulders, Robert L. Burkart, Ziemer, Stayman, Weitzel & Shoulders, Evansville, for appellee.

## OPINION

BAKER, Judge.

Appellants-plaintiffs, the estate of Timothy Lee Cummings and Murlin and Laura Franklin [collectively Cummings], appeal the trial court's grant of summary judgment in favor of appellee-defendant PPG Industries, Inc. in their respective lawsuits against PPG which arose out of an automobile accident caused by an underage, intoxicated, PPG employee, Jonathan Duffy.[1]

### FACTS [2]

The facts in the light most favorable to the nonmovant Cummings reveal that on June 21, 1991, PPG employees organized a party for third-shift PPG employees at the Hornville Tavern. The PPG employees responsible for organizing the party negotiated the prices of the food and drinks with the Hornville Tavern without any assistance or involvement from PPG management. To advertise the party, PPG employees posted notices at the PPG plant which stated that minors were not permitted to attend the party. The Hornville Tavern was responsible for asking for identification from its customers and for dispensing and serving the alcoholic beverages at the party.

The employees who attended the party contributed money towards the party. PPG management, who had approved of the party, also contributed money to defray its cost. However, there has been no suggestion that PPG required or expected its employees to attend the party. While many employees attended the party, others did not attend.

The party began shortly after the third shift ended at 8:00 a.m. and continued into the afternoon. Duffy, an underage PPG employee, attended the party, evaded detection by the Hornville Tavern employees, drank alcoholic beverages, and became intoxicated. Duffy's supervisor, who was at the party, knew that Duffy was a minor and that he was intoxicated. Duffy's supervisor tried unsuccessfully to obtain Duffy's car keys before Duffy left the party. After Duffy left the party, he drove north in the southbound lane of U.S. Highway 41 and collided with the car driven by Murlin Franklin in which Cummings was a passenger. Cummings was killed in the accident and Franklin sustained injuries. After having learned of the accident, PPG management ended the party.

Duffy was convicted of operating a vehicle while intoxicated resulting in death,[3] a Class C felony. The Hornville Tavern admitted that it had violated IND.CODE § 7.1–5–7–8, which prohibits serving an alcoholic beverage to a minor, and IND.CODE § 7.1–5–10–15, which prohibits serving an alcoholic beverage to an intoxicated person and was fined by the Indiana Alcoholic Beverage Commission.[4]

Cummings and Franklin each brought separate lawsuits against PPG alleging that PPG was liable under Indiana's Dram Shop Act [5] and under a common-law theory of negligence. In response, PPG filed a motion for summary judgment which the trial court granted on April 21, 1994.

### DISCUSSION

#### I. Standard of Review

■ A court on appeal stands in the same position as the trial court when reviewing a summary judgment motion. *Briar v. Elder-Beerman Dep't Store, Inc.* (1994), Ind.App., 645 N.E.2d 8, 11. We consider the pleadings and evidence designated under Ind.Trial Rule 56(C), in a light most favorable to the nonmovant, without determining their weight or credibility. *Houin v. Burger by Burger* (1992), Ind.App., 590 N.E.2d 593, 596. Summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*; T.R. 56(C).

---

1. Although the estate of Cummings and the Franklins filed separate lawsuits against PPG, the suits have been consolidated for purposes of appeal.

2. Oral argument was held in this case on April 11, 1995, at Saint Mary-of-the-Woods College.

3. IND.CODE § 9–30–5–5.

4. The Cummings' and Franklins' suit against the Hornville Tavern is not at issue in this appeal.

5. IND.CODE § 7.1–5–10–15.5.

## II.  Dram Shop Liability

■ First, Cummings contends that PPG furnished or provided an alcoholic beverage to Duffy, and thus is liable under Indiana's Dram Shop Act.  Under Indiana law, civil liability may be imposed under the Dram Shop Act for injuries to third parties caused by violations of I.C. § 7.1–5–7–8, which makes it unlawful for any person to "sell, barter, exchange, provide, or furnish" an alcoholic beverage to a minor, and/or I.C. § 7.1–5–10–15, which makes it unlawful for any person to "sell, barter, deliver, or give away" an alcoholic beverage to an intoxicated person.  *Rauck v. Hawn* (1990), Ind.App., 564 N.E.2d 334, 337.  A person, however, may not be held civilly liable under the Act for "furnishing" an alcoholic beverage to a person, including a minor, unless the person who furnishes the alcohol had actual knowledge that the person served was visibly intoxicated.  *Thompson v. Ferdinand Sesquicentennial Comm., Inc.* (1994), Ind.App., 637 N.E.2d 178, 180.

Under Indiana's Dram Shop Act, the term "furnish" is defined to include "barter, deliver, sell, exchange, provide, or give away." IND.CODE § 7.1–5–10–15.5(a).  We have examined the term "furnish" in the context of civil liability under Indiana's Dram Shop Act and have held that a person who merely supplies money that he knows will be used to purchase an alcoholic beverage, but neither possesses nor controls the liquor itself, does not "furnish" an alcoholic beverage so as to impose civil liability for injuries to a third person under the Act.  *See Rauck*, 564 N.E.2d 334; *Lather v. Berg* (1988), Ind.App., 519 N.E.2d 755.  In *Rauck*, we examined several Indiana Dram Shop Act liability cases and determined that:

> In each case where it has been held that a defendant furnished alcohol to another for his or her use in violation of the statutes [I.C. § 7.1–5–7–8 or I.C. § 7.1–5–10–15],

the supplier was 'the active means' by and through which the liquor was placed in the custody and control of the intoxicated person.

564 N.E.2d at 337.

■ In the case at bar, PPG never possessed or controlled the alcoholic beverages that Duffy drank.  The record reveals that the Hornville Tavern, not PPG, was responsible for dispensing and serving the alcoholic beverages at the party.  Thus, PPG was not the active means by and through which Duffy obtained the alcoholic beverages.  Even though PPG supplied some of the money used to purchase the alcoholic beverages and food for the party, PPG did not "furnish" the alcoholic beverages to Duffy so as to invoke liability under the Act.[6]

Cummings counters that PPG demonstrated that it furnished the alcoholic beverages to Duffy because it had the ability to control the party and the distribution of the alcoholic beverages.  Cummings asserts that PPG illustrated this control by ending the party after the accident.  We disagree.

Although PPG exercised authority over its employees when it terminated the party, PPG did not control the manner in which Duffy obtained the alcoholic beverages.  In other words, PPG was not the active means by and through which Duffy acquired the alcoholic beverages.  Although Cummings' control argument may be relevant under their common law theory of liability, it does not create a genuine issue of material fact regarding whether PPG furnished the alcoholic beverages to Duffy in violation of the Act.

Next, Cummings maintains that even if PPG did not "furnish" the alcoholic beverages in violation of the Act, PPG "provided" alcohol to Duffy so as to invoke civil liability under the Act.  Cummings correctly asserts that one of the relevant sections under the

6.  Cummings urges us to follow *Rodriguez v. Solar of Michigan* (1991), 191 Mich.App. 483, 478 N.W.2d 914, 921–22, in which the Michigan Court of Appeals declined to rule as a matter of law that an employer, who paid for the alcohol at its annual Christmas party, requested two open bars, maintained some control over the supplying of alcohol to minors and even wanted minors to be served, was not a social host for purposes of dramshop liability.  However, unlike *Rodriguez*, Duffy had not been privileged to drink at the Hornville Tavern as a result of his status as a PPG employee.  Instead, minors were to have been excluded by employees of the Hornville Tavern because it was the Tavern's responsibility to ask for identification from its customers.

Dram Shop Act, I.C. § 7.1–5–7–8, may be violated by one who either "furnishes" or "provides" alcoholic beverages. However, Cummings is incorrect in their assertion that because our General Assembly included both terms in I.C. § 7.1–5–7–8 that it must have intended that they have different meanings under the Act.

■ Statutes relating to the same general subject matter are in pari materia and should be construed consistently and harmoniously, rather than in a manner that renders them conflicting. *Greyhound Financial Corp. v. R.L.C., Inc.* (1994), Ind.App., 637 N.E.2d 1325, 1327. Under the Dram Shop Act, the term "furnish" is defined to include "barter, deliver, sell, exchange, provide, or give away." I.C. § 7.1–5–10–15.5(a). Thus, the term "furnish" is defined to include the term "provide." Because Indiana's Dram Shop Act and I.C. § 7.1–5–7–8 are in pari materia, they must be read consistently and harmoniously, not in a manner advocated by Cummings that would render them in conflict. Therefore, we hold that the two terms were not intended to have two different meanings under the Act and because, as we previously found, PPG did not furnish the alcoholic beverages to Duffy, it also did not provide the alcoholic beverages to Duffy.[7] In conclusion, we have found no legal basis on which to conclude that PPG violated Indiana's Dram Shop Act. Thus, the trial court's grant of summary judgment in favor of PPG was proper. *See Rauck,* 564 N.E.2d at 337.

### III. Negligence

■ Next, Cummings contends that PPG is liable under a common-law theory of negli-gence.[8] To recover under a theory of negligence, a plaintiff must establish three elements: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff proximately caused by the breach. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995. Because it is dispositive, we address only the first requisite element relating to the existence of a duty.

■ The existence of a duty is a question of law for the court to determine. *Id.* In order for a court to impose a duty at common law, it must balance the following factors:

(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns.

*Id.*

### A. Relationship Between the Parties

■ It is well settled that unless a plaintiff shows an affirmative act of misconduct by a defendant, negligence arising from nonfeasance must be premised on a special relationship between the parties. *Lather,* 519 N.E.2d at 759. It is the exclusive province of the court to determine whether the relationship between the parties gives rise to a duty to exercise care. *Gariup,* 519 N.E.2d at 1228. Indiana courts have shown a great reluctance to require an individual to take affirmative action to control a third party when there is no special relationship between them. *Lather,* 519 N.E.2d at 759. Thus, in

7. Cummings cites *Dower v. Gamba* (1994), N.J.Super.Ct.App.Div., 647 A.2d 1364, for the proposition that the term "provide" is defined to include those situations where a social host does not directly serve the alcoholic beverage to the visibly intoxicated driver, but indirectly dispenses or furnishes the alcoholic beverage. In *Dower,* the New Jersey Court of Appeals stated that both the duty and the limitation spelled out in New Jersey's Dram Shop Act deals with knowingly making alcoholic beverages available to a person who was visibly intoxicated either "in the social host's presence" or "under circumstances manifesting a reckless disregard of the consequences as affecting the life or property of another." *Id.*

at 1367. Because we believe that the *Dower* decision is dictated by New Jersey's Dram Shop Act, which is significantly broader in scope and more encompassing than our own, we refuse to extend its reasoning here.

8. We note that notwithstanding the general principle that the activity of the legislature in a given area generally leads to preemption, our supreme court has chosen to hold otherwise. Thus, Cummings may bring their common law negligence claim despite Indiana's Dram Shop Act. *See Gariup Const. Co., Inc. v. Foster* (1988), Ind., 519 N.E.2d 1224, 1227.

the present case, we must determine whether, under the particular facts most favorable to the nonmovant Cummings, the employer-employee relationship between PPG and Duffy gave rise to a duty from PPG to Cummings to supervise the party or otherwise control Duffy's behavior.

Cummings cites *Gariup*, 519 N.E.2d 1224, for the contention that PPG owed a common law duty to Cummings. In *Gariup*, the employer furnished alcoholic beverages at its traditional Christmas party which was held on its own premises. The employer's president attended the party. An employee, who participated in a drinking game called "quarters," became intoxicated and was involved in an automobile accident after leaving the party. Our supreme court held that the employer's relationship with its employee and third-party motorists gave rise to a duty of ordinary and reasonable care to supervise the party and that a reasonable jury could have found that the employer breached its duty by failing to stop or discourage the drinking game and by continuing to furnish alcoholic beverages to the employee. *Id.* at 1229. The supreme court, however, was careful to limit its holding to the "facts and circumstances unique to the present case." *Id.*[9]

A review of cases in other jurisdictions that have addressed this issue reveals that courts have generally held that where an intoxicated employee causes an automobile accident after leaving the employer's premises, the employer owes no duty to third-person motorists because the accident was committed outside the scope of the employment, did not take place on the employer's premises, and did not involve the use of the employer's chattels. *Tallariti v. Kildare* (1991), 63 Wash.App. 453, 820 P.2d 952, 955 (drinking on job-site after work responsibilities had been completed); *Bruce v. Chas Roberts Air Conditioning* (1990), 166 Ariz. 221, 227–230, 801 P.2d 456, 462–465 (drinking at an impromptu picnic conducted at the employer's workyard); *Thies v. Cooper* (1988), 243 Kan. 149, 753 P.2d 1280, 1285 (employer had furnished the employee seven free beers in its hospitality lounge before the employee drove home from work); *Meyers v. Grubaugh* (1988), 242 Kan. 716, 750 P.2d 1031, 1034–1035; *D'Amico v. Christie* (1987), 71 N.Y.2d 76, 524 N.Y.S.2d 1, 518 N.E.2d 896. However, in *Dickinson v. Edwards* (1986), 105 Wash.2d 457, 716 P.2d 814, 822–823, the Washington Supreme Court found the existence of a duty where the employer had sponsored and furnished alcoholic beverages at a banquet held at a restaurant at which an employee became intoxicated and caused an automobile accident after leaving the banquet. The court found that a genuine issue of material fact existed regarding

---

9. In determining the existence of the duty found in *Gariup*, our supreme court used the following general principles from the *Restatement (Second) of Torts:*

§ 302 Risk of Direct or Indirect Harm
A negligent act or omission may be one which involves an unreasonable risk of harm to another through either
(a) the continuous operation of a force started or continued by the act or omission, or
(b) the foreseeable action of another, a third person, an animal, or a force of nature.
§ 302A Risk of Negligence or Recklessness of Others
An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person.
§ 308 Permitting Improper Persons to Use Things or Engage in Activities
It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.
§ 317 Duty of Master to Control Conduct of Servant
A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
(a) the servant
(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
(ii) is using a chattel of the master, and
(b) the master
(i) knows or has reason to know that he has the ability to control his servant, and
(ii) knows or should know of the necessity and opportunity for exercising such control.
*Id.* at 1228–29.

whether the employee was within the scope of his employment when drinking at the banquet since the employee's attendance at the banquet had been expected by the employer. *Id.*

The present case is distinguishable from *Gariup* and *Dickinson* in several important respects. First, unlike *Gariup,* where the employer held its annual Christmas party on its own premises, the shift party in the present case was not held on PPG's premises but was held at the Hornville Tavern which has admitted legal responsibility for serving the alcoholic beverages to Duffy. Second, unlike *Gariup* and *Dickinson,* Duffy had not been privileged to drink alcoholic beverages at the Hornville Tavern as a result of his status as a PPG employee. Instead, minors were to have been excluded by employees of the Hornville Tavern because it was the Tavern's responsibility to ask for identification from its customers. Although PPG exercised authority over its employees by terminating the party after the accident, it would be difficult to argue that PPG was responsible for supervising the party where the employees themselves had organized the party and the Hornville Tavern had been responsible for dispensing and serving the alcoholic beverages. Finally, unlike in *Dickinson,* there has been no suggestion that PPG required or expected its employees to attend the party. Thus, we find that, under the particular facts most favorable to the nonmovant Cummings, the employer-employee relationship between PPG and Duffy did not give rise to a duty from PPG to Cummings to supervise the party or otherwise control Duffy's behavior.

### B. Foreseeability

Cummings contends that "PPG should have foreseen the risks involved in sponsoring a beer keg party at eight-o'clock in the morning for a group of grave-yard shift employees that included minors." Appellant's Reply Brief at 19. Our supreme court has recognized that "the duty of reasonable care is not, of course, owed to the world at large, but rather to those who might reasonably be foreseen as being subject to injury by the

breach of the duty." *Webb,* 575 N.E.2d 992, 997. In *Webb,* our supreme court stated:

> Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. *Id.* Thus, part of the inquiry into the existence of a duty is concerned with exactly the same factors as is the inquiry into proximate cause. *Prosser & Keeton on Torts,* § 53 (5th ed. 1984). Both seek to find what consequences of the challenged conduct should have been foreseen by the actor who engaged in it. We examine what forces and human conduct should have appeared likely to come on the scene, and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct. *Harper, James & Gray,* The Law of Torts Vol. 3 § 18.2 (2d ed. 1986).

*Id.* at 997. It is well settled that where a defendant's negligence merely creates a condition by which the subsequent injury producing acts of another are made possible, the existence of the first condition cannot be the proximate cause of the injuries but is the remote cause. *McKinney v. Public Service Co. of Indiana, Inc.* (1992), Ind.App., 597 N.E.2d 1001, 1005, *trans. denied.*

Here, while we acknowledge that PPG may have supplied the preliminary link in the chain of events leading to Duffy's ultimate intoxication, we cannot say that it was foreseeable to PPG that the Hornville Tavern, which was responsible for asking for identification from its customers and for dispensing and serving the alcoholic beverages at the party, would violate both I.C. § 7.1–5–7–8 and I.C. § 7.1–5–10–15 by serving alcoholic beverages to an underage visibly intoxicated person who would then attempt to drive home. Thus, we conclude as a matter of law that it was not reasonably foreseeable to PPG that its actions in approving of the party and contributing a portion of the money to defray the costs of the party would result in harm to Cummings.

### C. Public Policy

Finally, we must consider whether public policy considerations weigh in favor of imposing a duty here. In the present case, the

record reveals that although PPG approved of the party at the Hornville Tavern and contributed some money to defray its costs, it did not assume the responsibility of asking for identification from the patrons of the Tavern and did not assume the responsibility of dispensing and serving alcohol at the Tavern. We further note that although one of Duffy's supervisors attempted unsuccessfully to obtain Duffy's car keys, Cummings conceded at oral argument that Duffy's supervisor had neither a legal duty, other than social responsibility, or the authority to take Duffy's keys. We believe that public policy and social mores weigh against imposing a duty on PPG in the present case for the illegal actions of both the Hornville Tavern and Duffy.

■ In conclusion, our analysis of the three factors which must be balanced in order to impose a duty leads us to conclude that PPG did not owe a duty to Cummings to supervise the party or otherwise control Duffy's behavior sufficient to sustain Cummings' common law negligence claim. In order to prevail on a negligence claim, Cummings had the burden of presenting evidence sufficient to support a finding on every essential element of the tort. It is axiomatic that without a duty, there can be no recovery in negligence. *Hooks SuperX, Inc. v. McLaughlin* (1994), Ind., 642 N.E.2d 514, 517.

## CONCLUSION

We find that the trial court correctly concluded that, as a matter of law, PPG did not violate Indiana's Dram Shop Act and that PPG did not owe a duty to supervise the party or otherwise control Duffy's behavior sufficient to sustain Cummings' common law negligence claim.

Judgment affirmed.

NAJAM, J., concurs.

BARTEAU, J., dissents with separate opinion.

BARTEAU, Judge, dissenting.

I respectfully dissent to Part III because I believe summary judgment was inappropriate on the common law negligence claim.

The three-part *Webb* analysis identified by the majority leads to the conclusion that PPG did owe a duty to Cummings and Franklin. Whether PPG breached that duty, proximately causing Cummings's and Franklin's injuries, are questions of fact for the jury to determine.

First, we must determine whether a relationship exists between PPG and the plaintiffs that will support a duty. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995, *reh'g denied.* In *Gariup Const. Co., Inc. v. Foster* (1988), Ind., 519 N.E.2d 1224, the supreme court found such a relationship where the employer had a party for its employees and served alcohol. The majority distinguishes *Gariup* by emphasizing that the shift party was not held on PPG's property, and that Duffy, as a minor, was not privileged to drink at the tavern as one of PPG's employees. I do not believe that these distinctions are enough to conclude that a relationship does not exist that would support a duty to motorists like Cummings and Franklin.

PPG involved itself in the employees' shift party by suggesting the party and giving money to the employees to help pay for the party. Although the party was held at a tavern and the tavern employees actually dispensed the alcohol, PPG nevertheless sponsored the party for its employees and Duffy was present at the tavern as a PPG employee. Under the rationale of *Gariup*, this is sufficient to establish the necessary relationship that would support a duty to exercise care with respect to motorists.

The majority finds it significant that PPG had instructed that no minors would be allowed to attend the party and that it was the tavern's responsibility to ask for identification from the persons present. However, those facts are relevant in determining whether PPG breached the duty, not whether a duty exists in the first place.

Second, we must determine whether the injuries to Cummings and Franklin were foreseeable. *Webb*, 575 N.E.2d at 995. Contrary to the majority's view, I believe there is no question that injuries to motorists at the hands of a drunk driver are foreseeable when one sponsors a party at which alcohol will be served.

Third, public policy concerns must be considered. I disagree with the majority that public policy concerns weigh against imposing a duty where PPG did not itself check identifications or dispense the alcohol. Again, I believe the delegation of those responsibilities to the tavern go to the issue of whether PPG exercised reasonable care, not whether they had a duty to exercise reasonable care. I believe public policy should impose a duty to exercise reasonable care to prevent drunk driving when one sponsors a party at which alcohol will be served.

The three *Webb* factors—relationship, foreseeability and public policy—weigh in favor of imposing a duty on PPG to exercise reasonable care. Thus, I conclude that a duty does exist. Remaining to be answered is whether PPG did exercise reasonable care. Whether the duty was breached presents a question of fact for the jury and summary judgment is inappropriate.

I would reverse the trial court's grant of summary judgment in favor of PPG on the negligence claim.