**JoAnne LETT**

v.

**COLLIS FOODS, INC., et al.**

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

June 26, 2001.

Application for Permission to Appeal
Denied by Supreme Court,
Recommended for Publication
Nov. 5, 2001.

---

Wayne A. Ritchie, II, Knoxville, TN, for appellant, JoAnne Lett.

Linda J. Hamilton Mowles, Knoxville, TN, for appellee, Collis Foods, Inc.

## OPINION

SUSANO, J., delivered the opinion of the court, in which GODDARD, P.J., and FRANKS, J., joined.

This case presents the question of whether, under the facts presented here, the defendant employer owed a duty to a third person to prevent an intoxicated employee from leaving work and driving home. The employee, Lynda Mills, was intoxicated when she reported for her shift of work at the Waffle House. Her employer—sued as Collis Foods, Inc. and Waffle House, Inc. (collectively referred to herein as "Collis Foods")—attempted, without success, to sober up Mills. Collis Foods' manager then ordered an assistant manager to clock Mills out, which was done. Mills refused an offer of a ride home and drove herself. On the way home, she collided with the plaintiff, JoAnne Lett, seriously injuring her. Lett filed suit against Mills and later amended her complaint to add Collis Foods as a party defendant. The trial court granted Collis Foods summary judgment. Lett appeals, asserting that Collis Foods owed her a duty of reasonable care. We affirm.

### I.

The events at issue took place on the afternoon of June 4, 1998. Mills was employed by Collis Foods as a Waffle House waitress. On the day in question, Mills was scheduled to work from 2:00 p.m. until 10:00 p.m. After calling to say that she would be late, she drove to work in her car, arriving at approximately 2:30 p.m. When Mills got to the Waffle House, the assistant manager on duty, Diana Sue Lake, smelled an odor of an alcoholic beverage on her breath and observed that her speech was slurred and she was staggering.

Mills clocked in and attempted to work, at one time trying to serve coffee to customers by giving them a coffee filter holder rather than a coffee pot. Mills was furnished coffee by her employer, and she tried to eat, but she could not stay awake. Lake eventually led Mills to the back of

the restaurant so she could sleep on some crates. After sleeping approximately 45 minutes, Mills wanted to leave, but Lake would not let her go because, as Lake stated in her deposition, "she was too messed up to drive." Despite her employer's efforts, Mills' condition did not improve.

Co-workers made telephone calls in an attempt to find someone to get Mills home safely. Lake herself offered to take Mills home, but Mills refused. Lake and the manager on duty, Taz Arneson, disagreed as to how best to deal with the situation. Lake suggested that Arneson "sit on her, do whatever, just don't let her leave the building," and Arneson responded that "I can't stop her." Ultimately, Arneson told Lake to clock Mills out, saying that if she did not, "we will get sued." Mills then left the premises.

Shortly thereafter, at approximately 5:30 p.m., some three hours after she first reported to work, Mills, driving west on I–640, crossed the median and collided with the plaintiff, JoAnne Lett, who was driving in the opposite direction.

Lett filed suit against Mills and later amended her complaint to name Collis Foods as a defendant. Deposition testimony revealed, in addition to the facts already stated, that Mills' job responsibilities as a Waffle House waitress did not include travel, running errands, or driving a vehicle on behalf of Collis Foods. She was never compensated for driving her own vehicle, and, at the exact time of the accident, she had been clocked out and was not earning wages. Other testimony revealed that the Waffle House had an informal practice of finding transportation home for employees who could not drive home safely.

The trial court granted the employer's motion for summary judgment.[1] Lett now appeals, asserting that the defendant owed her a duty of reasonable care.

## II.

In deciding whether a grant of summary judgment is appropriate, courts are to determine "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn.R.Civ.P. 56.04. Courts "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall,* 847 S.W.2d 208, 210–11 (Tenn.1993).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. *Id.* at 215. Once the moving party satisfies its burden, the burden then shifts to the nonmoving party to show that there is a genuine issue of material fact requiring submission to the trier of fact. *Id.* While summary judgment is generally inappropriate in negligence cases, *Fruge v. Doe,* 952 S.W.2d 408, 410 (Tenn.1997), it is appropriate in such cases "where the dispositive issue is whether the defendant owed a duty to the plaintiff since the existence of a duty is always a question of law for the court." *Nichols v. Atnip,* 844 S.W.2d 655, 658 (Tenn.Ct.App.1992).

1. The trial court's order dismissing Collis Foods was entered pursuant to the provisions of Tenn.R.Civ.P. 54.02.

Since summary judgment presents a pure question of law, our review is *de novo* with no presumption of correctness as to the trial court's judgment. *Gonzales v. Alman Constr. Co.,* 857 S.W.2d 42, 44 (Tenn.Ct.App.1993).

### III.

### A.

Lett argues that the trial court erred in granting summary judgment. More specifically, she asserts that a duty of reasonable care existed because (1) the employer-employee relationship present in this case gave rise to a duty to act reasonably; (2) Collis Foods assumed a duty by taking control of Mills; and (3) Collis Foods assumed a duty by adopting a policy or practice of ensuring that incapacitated employees got home safely.

In making these arguments, Lett relies upon well-established but general-in-nature principles of negligence in Tennessee, as well as several sections of the Restatement (Second) of Torts (1965). She also urges us to follow what she asserts is persuasive authority from other jurisdictions.

To prevail on a negligence claim in Tennessee, a plaintiff must establish the following elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn.1995). It is the first element with which we are concerned in this appeal.

To establish duty, a plaintiff must show that there exists a "legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *Id.* A risk of harm is unreasonable "if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *Id.* In making this determination, several factors are important: (1) the foreseeable probability of the harm or injury occurring; (2) the possible magnitude of the potential harm or injury; (3) the importance or social value of the activity engaged in by the defendant; (4) the usefulness of the conduct to the defendant; and (5) the feasibility, relative usefulness, relative safety, and relative costs and burdens, of an alternative, safer course of conduct. *Id.* As previously indicated, the question of whether one person owes a duty to another is a question of law to be decided by the court. *Nichols,* 844 S.W.2d at 658.

Lett argues that Collis Foods was negligent in permitting Mills to drive home in her condition. Implicit in this argument is the contention that Collis Foods had a duty to *prevent* Mills from driving home from work in an intoxicated state.

Generally, one does not have a duty to control the conduct of another so as to prevent that person from injuring a third party. *Nichols,* 844 S.W.2d at 661. There are, however, exceptions to this general rule, one of which is "where the defendant stands in some special relationship either to *the individual whose conduct threatens to cause harm* or to the individual exposed to the harm." *Newton v. Tinsley,* 970 S.W.2d 490, 492 (Tenn.Ct.App.1997) (emphasis added). Tennessee has adopted the Restatement (Second) of Torts § 315 (1965), *see Newton,* 970 S.W.2d at 492. That particular part of the Restatement provides as follows:

> There is no duty so to control the conduct of a third person as to prevent him

from causing physical harm to another unless

(a) *a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct,* or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

(Emphasis added).

■ Such special relationships envisioned by the Restatement include parent and minor child, employer and employee, property owner and guest, and a custodian and those in his or her care who demonstrate dangerous propensities. *See* Restatement (Second) of Torts §§ 316–319. It is unclear whether Tennessee has adopted § 317 of the Restatement relating to employer-employee relationships; but, in any event, Lett's counsel stated at oral argument that his client does not rely on § 317, presumably because she cannot satisfy its requirement that, for a duty to exist, the employee must have been on the employer's premises or using the employer's chattel. *See* Restatement (Second) of Torts § 317.

■ With respect to the meaning of "special relation" as that term is used in § 315(a) of the Restatement, Tennessee courts have found that there is no "special relation" such as to impose upon the defendant a duty to control a third party's conduct unless the defendant has the means and ability to so control the conduct of the third party. *See Newton,* 970 S.W.2d at 493.[2]

Thus, a crucial question is whether Collis Foods had the means and ability to control Mills' conduct. If it did not have the means or the ability to control the conduct in question, then Collis Foods had no duty to control same, and it cannot be held to be negligent for failing to do so. In Tennessee, this concept has been discussed in the context of the following relationships: husband and wife, parent and adult child, and passenger and driver. *See Newton,* 970 S.W.2d at 493, 494 (finding, as a matter of law, that a wife had no duty to prevent her husband from shooting and injuring the plaintiff, because she did not have the means and ability to control her husband); *Nichols,* 844 S.W.2d at 662 (finding, as a matter of law, that parents had no duty to prevent their adult son from driving while intoxicated and killing the plaintiffs' decedents, because, *inter alia,* there was no indication that the parents had the means or ability to exercise control over their son's use of his car); *Cecil v. Hardin,* 575 S.W.2d 268, 270, 272 (Tenn.1978) (finding, as a matter of law, that a passenger had no duty to prevent a driver from driving while intoxicated and killing the plaintiffs' decedent, because, *inter alia,* there was no allegation of a special relationship, and the passenger "did no more than acquiesce in [the driver's] determination to drive his own car.").

To date, no Tennessee case has addressed the question of whether an employer-employee relationship constitutes a "special relation" within the meaning of Restatement § 315(a), separate and apart from Restatement § 317, such that an employer may be held liable for allowing an intoxicated employee to drive home. Consequently, each of the parties look to other jurisdictions to support their arguments.

B.

Lett strongly urges us to follow the holding in *Otis Engineering Corp. v.*

---

**2.** Section 315(b) of the Restatement deals with a defendant's duty to protect a plaintiff, as opposed to a defendant's duty to control a third party who may injure a plaintiff. Section 315(b) is not at issue in this case.

*Clark*, 668 S.W.2d 307 (Tex.1983), and cases cited therein. In *Otis*, Matheson, an Otis employee, consumed alcoholic beverages while on his dinner break. *See id.* at 308. When he returned to work, his supervisor observed his condition and suggested that he go home. *See id.* The supervisor escorted Matheson to the parking lot and asked him if he could make it home. *See id.* Matheson responded that he could, and shortly thereafter, he was involved in an accident that killed the plaintiffs' decedents. *See id.* The plaintiffs filed suit against Otis, contending that sending an employee it knew to be intoxicated home in the middle of his shift constituted an affirmative act that imposed a duty upon Otis to exercise due care. *See id.*

In resolving this question, the Texas Supreme Court discussed three cases from other jurisdictions: *Leppke v. Segura*, 632 P.2d 1057 (Colo.Ct.App.1981); *Brockett v. Kitchen Boyd Motor Co.*, 264 Cal.App.2d 69, 70 Cal.Rptr. 136 (1968); and *Robertson v. LeMaster*, 171 W.Va. 607, 301 S.E.2d 563 (1983).

In *Leppke*, a tavern owner, after refusing to serve an intoxicated man, directed an employee to jump-start the man's vehicle. *See Leppke*, 632 P.2d at 1058. The man subsequently caused an accident that killed one person and injured another. *See id.* at 1058–59. The court reversed a summary judgment in favor of the tavern owner, finding error in the trial court's conclusion that the tavern owner owed no duty of care to the plaintiff. *See id.* at 1059. The court stated that "a finder of fact could conclude that, *by jump-starting an automobile for an obviously drunken driver*, thus giving him mobility which otherwise he would not have had, [the defendant] set into motion a force involving an unreasonable risk of harm to others." *See id.* (emphasis added).

In *Brockett*, an employer hosted a Christmas party at which an underage employee became grossly intoxicated. *See Brockett*, 70 Cal.Rptr. at 137. The employer then placed the employee into his automobile and directed him to drive home. *See id.* The employee subsequently struck another automobile, injuring several plaintiffs. *See id.* The court overruled a demurrer in favor of the employer, finding that, although the furnishing of intoxicants generally does not make the furnisher liable for injuries caused by the intoxicated person, the special relationship of employer and employee, coupled with the acts of the employer of *placing the employee into his vehicle and directing him to drive home*, were sufficient to impose upon the employer a duty to use reasonable care, both for the employee's sake and the sake of the general public. *See id.* at 138.

In *Robertson*, an employer required its employee to work 27 consecutive hours at hard labor. *See Robertson*, 301 S.E.2d at 565. After repeated requests by the employee to go home, the employer finally drove the employee to his car so he could drive home. *See id.* On his way home, the employee fell asleep and caused an accident, injuring the plaintiffs. *See id.* The court reversed a directed verdict in favor of the employer, saying that "we believe that the [employer] could have reasonably foreseen that its exhausted employee, *who had been required to work over 27 hours without rest*, would pose a risk of harm to other motorists while driving the 50 miles from the [employer's] office to his home. Indeed, it could be said that the [employer's] negligent conduct under these facts was not merely a failure to exercise appropriate precautionary measures, but includes an element of affirmative conduct in requiring [the employee] to work unreasonably long hours and then

driving him to his vehicle and sending him out on the highway in such an exhausted condition as to pose a danger to himself or others. When such affirmative action is present, liability may be imposed regardless of the existence of a relationship between the defendant and the party injured by the incapacitated individual." *See id.* at 568–69 (emphasis added).

The Texas Supreme Court in *Otis*, interpreting *Leppke, Brockett,* and *Robertson* as situations involving affirmative acts of the employer, held that "when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others." *See Otis*, 668 S.W.2d at 311.

The *Otis* court analogized this duty to the duty articulated in the Restatement (Second) of Torts § 319, which provides as follows:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

The court in *Otis* concluded that, under the facts of that case, summary judgment for the employer was not appropriate, and it remanded the case for trial. *See Otis*, 668 S.W.2d at 311.

Lett argues that we should follow *Otis, Leppke, Brockett,* and *Robertson.*[3] She asserts that Collis Foods assumed a duty by virtue of the employer-employee relationship and by affirmatively taking charge of Mills when she clocked in to begin work. She asserts that this duty continued until Mills' shift was over and included a duty to third persons to ensure that Mills did not leave in an impaired state. Deciding to send her home and allowing her to leave, the argument concludes, constitutes a breach of this duty under the authority of *Otis, Leppke, Brockett,* and *Robertson.*

To the extent that *Otis* supports the plaintiff's position in the instant case,[4] we decline to follow it. *Otis* was decided by a closely-divided (5–4) Texas Supreme Court. The four-member minority opined that there are only two situations where an employer has a duty to exercise control over an off-duty employee: (1) under the Restatement (Second) of Torts § 317, where the employee is on the employer's premises or using the employer's chattel, and (2) under the Restatement (Second) of Torts § 319, where an employer takes control of an employee likely to cause harm. *See Otis*, 668 S.W.2d at 313 (McGhee, J., dissenting). The minority in *Otis* contended that, in order for an employer to "take

---

**3.** Lett also asserts that we should follow the case of *Fletcher Trucking v. Columbus Fair Auto Auction, Inc.*, C/A Nos. 94APE09–1394 and 94APE10–1503, 1995 WL 360323 (Ohio Ct.App., filed June 13, 1995), which Lett contends follows *Otis. Fletcher* does indeed follow *Otis. See id* at *5. However, the case dealt with an employee who was suspended mid-shift for intoxication and drove off the employer's premises *in a car belonging to the employer. See id.* at *1. Immediately after declining to hold that the employer, as a matter of law, did not owe a duty to the plaintiffs, the court stated "[w]e express no

opinion, however, as to whether an employer has a duty to prevent an employee from leaving *in his own car* when he is suspended during the middle of a shift." *See id.* at *5 (emphasis added). In our judgment, *Fletcher* has no bearing on the facts of the instant case, and we will not address it further.

**4.** The facts of *Otis* are somewhat different from the facts of the instant case. In *Otis*, the employee initially reported to work in a sober condition; in the case now before us, Mills was intoxicated when she came to work.

charge" of an employee within the meaning of § 319, there "must be a custodial relationship, one in which the person charged with controlling the conduct of another voluntarily assumes responsibility for that person." *See id.* The dissenters found that the facts in *Otis* did not support a finding that Otis voluntarily assumed control over its employee or assumed responsibility for his conduct. *See id.* They distinguished *Leppke, Brockett,* and *Robertson,* opining that *Otis* involved no affirmative act by the employer rising to the level of jump-starting an intoxicated driver's car, inducing an employee to drink, putting him in his car and telling him to drive home, or requiring an employee to work 27 consecutive hours. *See id.* at 314–15; *see also Leppke,* 632 P.2d at 1058; *Brockett,* 70 Cal.Rptr. at 137; *Robertson,* 301 S.E.2d at 565. The dissent asserted that the only "affirmative act" of Otis was its *failure* to take charge of its employee and prevent him from driving home. *See Otis,* 668 S.W.2d at 313 (McGhee, J., dissenting). They contended that such a failure to act cannot be construed as an assumption of control over the employee or an assumption of responsibility for his conduct. *See id.*

The minority in *Otis* went on to state that apart from liability under § 317 or § 319 of the Restatement

> an employer has no duty to exercise control over an off-duty employee. One reason is because the employer lacks the corresponding legal right to exercise such control....Employees do not surrender their civil rights by virtue of their employment. Conversely, employers possess no immunity from false imprisonment suits and have no right to restrain or otherwise detain their off-duty employees against their will. The majority, however, would confront the employer with a Hobson's choice between liability to his employee for false imprisonment and liability to third persons for the acts of his employee.

*Id.* at 314 (citations omitted).

We are persuaded by the minority opinion in *Otis.* We find that the facts of the instant case likewise do not present affirmative acts sufficient to impose a duty upon Collis Foods to control the conduct of Mills, who was off-premises and off-duty as well.[5] She arrived at work intoxicated, and Collis Foods did not contribute to, condone, or seek to accommodate, her intoxication. It did not require her to drive home; in fact, it attempted to find her safe passage home, but she refused. In sum, the employer did not provide her mobility she otherwise did not have; it did not encourage her to drive home; and it did not contribute to the condition that made it unsafe for her to drive. In effect, the employer "did no more than acquiesce in [her] determination to drive [her] own car." *Cecil,* 575 S.W.2d at 272.

---

5. Lett argues that "[p]ermitting Collis Foods to escape liability based on its manger's instruction to clock out an obviously impaired employee would be inconsistent with common law negligence principles." She also repeatedly emphasizes that Mills was sent home in the middle of her shift. These arguments are apparently an attempt to convince us that Mills was still on-duty at the time of the accident. We are not persuaded. We agree with the Arizona Court of Appeals, which, when faced with a substantially similar circumstance in *Riddle v. Arizona Oncology Servs., Inc.,* 186 Ariz. 464, 924 P.2d 468 (Ariz. Ct.App.1996), stated that "[f]or all practical purposes, [the employee's] shift terminated, albeit prematurely, when she was told to leave....It would have been no different had [the employee] appeared for work in an intoxicated condition near the end of the workday and been told to leave at quitting time, and the accident occurred after work hours." *See id.* at 468, 924 P.2d 472.

There are several cases supporting the view that an employer has no legal duty to protect a third party from the tortious conduct of an off-duty, off-premises, intoxicated employee. *See Riddle v. Arizona Oncology Servs., Inc.,* 186 Ariz. 464, 468-69, 924 P.2d 468, 472, 473 (Ariz.Ct.App. 1996) (finding no duty where (1) the complaint alleged merely that the supervisor ordered the employee to leave the defendant's premises prior to the end of her shift; (2) the complaint contained no allegation that the employer ordered or required the employee to drive; and (3) the employee's intoxication was not caused, contributed to, or condoned by the employer); *Poplaski v. Lamphere,* 152 Vt. 251, 253-53, 565 A.2d 1326, 1327–28, 1331 (1989) (holding that an employer owed no duty to a third party who was injured by an intoxicated employee driving home from work where that employee arrived at work intoxicated and left two hours later without speaking to a supervisor); *Tallariti v. Kildare,* 63 Wash.App. 453, 458, 460, 820 P.2d 952, 955, 956 (Wash.Ct.App.1991) (holding that an employer owed no duty to a third party who was injured by an intoxicated employee driving home from work where the evidence showed that the employer did not encourage the employee to either drink or drive while intoxicated).

We therefore find and hold that Collis Foods owed no duty to Lett under §§ 315 and 319 of the Restatement to control the conduct of Mills because the conduct occurred off-premises, while Mills was off-duty, and because Collis Foods did not contribute to, participate in, or seek to accommodate, Mills' state of intoxication.

## IV.

Lett next argues that Collis Foods was negligent under the Restatement (Second) of Torts § 324A, which provides as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

It is not entirely clear whether Tennessee has adopted this section of the Restatement. *See Gaines v. Excel Indus., Inc.,* 667 F.Supp. 569, 571 (M.D.Tenn.1987) (finding that no Tennessee court has expressly adopted the section but holding that "faced with a situation similar to this case, a Tennessee court would apply the Restatement formulation."). In any event, it is clear, under Tennessee law, that "[o]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully." *Marr v. Montgomery Elevator Co.,* 922 S.W.2d 526, 529 (Tenn.Ct.App.1995).

Lett's argument relating to § 324A of the Restatement is essentially identical to her previous argument except that it does not rely upon the employer-employee relationship. The argument, in Lett's words, is that "a duty is owed to third persons by one who undertakes, by an affirmative act, to render aid or services to another and then is negligent in the performance of that undertaking."

We again disagree with Lett's characterization of Collis Foods' conduct toward Mills on the day of the accident. It is true that Collis Foods attempted to

sober up Mills. This action, however, was taken in an attempt to make her fit to work during her clocked-in shift. After discovering the futility of their efforts in this regard, their only goal was to get Mills off the premises. Any desire to help Mills get home safely was thwarted by Mills' determination to drive herself. In our judgment, the employer's conduct in this case was not such as to give rise to a duty under § 324A of the Restatement.

## V.

■ Lett's final argument is that Collis Foods assumed a duty by adopting a policy or practice of ensuring that employees who were unable to drive made it home safely. Lett offers no authority to support this contention, and we are aware of none. Failure to cite relevant authority constitutes a waiver of the issue. *Bean v. Bean,* 40 S.W.3d 52, 55 (Tenn.Ct.App.2000), *perm. app. denied* February 26, 2001; *see also* Tenn.R.App.P. 27(a)(7).

## VI.

It is important in this case to recognize that Collis Foods did absolutely nothing to *contribute* to Mills' state of intoxication or her decision to drive herself home. When she clocked in, she was already inebriated. At that juncture, the employer was presented with an intoxicated employee "on the clock" who, because of her condition, could not perform her duties. It reasonably tried, without success, to sober her up so she could work. Despite the employer's best efforts, Mills was still too intoxicated to work. Collis Foods had no legal right to tie her up or "sit on her" or otherwise prevent her from driving away in her own car. From a legal standpoint, it did not have the means or the ability to control its employee when she made the decision to drive a vehicle in her condition. The employer certainly was under no obligation to allow Mills to stay "on the clock" or to stay on its premises when she was too inebriated to work. The employer's passive acquiescence in her leaving the premises and driving away in her own vehicle, acts they had no legal right to prevent, is simply not enough to impose a duty on this employer who was totally blameless in the condition—Mills' intoxicated state—that led to the accident and the plaintiff's injuries. In our judgment, Collis Foods took no *affirmative* steps that contributed to or facilitated Mills' negligent act—driving a motor vehicle while under the influence of an intoxicant.

When the facts are viewed most favorably to the plaintiff, we find no duty on the part of Collis Foods running to the plaintiff.

## VII.

The judgment of the trial court granting summary judgment to Collis Foods is affirmed. The case is remanded for collection of costs assessed below, pursuant to applicable law. Costs on appeal are taxed to the appellant.