IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 21-0215
_____

FILED
**June 8, 2023**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS

SPEEDWAY LLC,
Defendant Below, Petitioner,

v.

DEBORAH L. JARRETT, AS THE EXECUTRIX
OF THE ESTATE OF KEVIN M. JARRETT,
Plaintiff Below, Respondent.

_____

Appeal from the Circuit Court of Marshall County
The Honorable David W. Hummel, Jr.
Civil Action No. 15-C-217

REVERSED

_____

Submitted: March 21, 2023
Filed: June 8, 2023

Robert L. Massie, Esq.
Jennifer W. Winkler, Esq.
Nelson Mullins Riley
& Scarborough LLP
Huntington, West Virginia
Counsel for Petitioner

Thomas J. Hurney, Jr., Esq.
Blair E. Wessels, Esq.
Jackson Kelly PLLC
Charleston, West Virginia
Todd A. Mount, Esq.
Shaffer & Shaffer, PLLC
Madison, West Virginia

Robert P. Fitzsimmons, Esq.
Clayton J. Fitzsimmons, Esq.
Fitzsimmons Law Firm PLLC
Wheeling, West Virginia
Gregory A. Gellner, Esq.
Gellner Law Offices
Wheeling, West Virginia
Counsel for Respondent

Michelle Marinacci, Esq.
Gold, Khourey & Turak, L.C.
Moundsville, West Virginia

David A. Sims

Counsel for Amicus Curiae
The Defense Trial Counsel
of West Virginia

Richard R. Heath, Jr., Esq.
Bowles Rice LLP
Charleston, West Virginia
Mark A. Behrens, Esq.
Cary Silverman, Esq.
Shook Hardy & Bacon L.L.P.
Washington, D.C.
Counsel for Amici Curiae
American Tort Reform Association,
Chamber of Commerce of the United
States of America, NFIB Small Business
Legal Center, National Association of
Convenience Stores, and American
Property Casualty Insurance Association

Law Offices of David A. Sims, PLLC
Vienna, West Virginia
Counsel for Amicus Curiae
The West Virginia Association for Justice

JUSTICE HUTCHISON delivered the Opinion of the Court.

## SYLLABUS BY THE COURT

1.      "The appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule 50(b) of the West Virginia Rules of Civil Procedure [1998] is *de novo*." Syl. Pt. 1, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009).

2.      "'No action for negligence will lie without a duty broken.' Syl. Pt. 1, in part, *Parsley v. General Motors Acceptance Corp*., 167 W. Va. 866, 280 S.E.2d 703 (1981)." Syl. Pt. 3, *Strahin v. Cleavenger*, 216 W. Va. 175, 603 S.E.2d 197 (2004).

3.      "The determination of whether a defendant in a particular case owes a duty to the plaintiff is not a factual question for the jury; rather the determination of whether a plaintiff is owed a duty of care by the defendant must be rendered by the court as a matter of law." Syl. Pt. 5, *Aikens v. Debow*, 208 W. Va. 486, 541 S.E.2d 576 (2000).

4.      "One who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm." Syl. Pt. 2, *Robertson v. LeMaster*, 171 W. Va. 607, 301 S.E.2d 563 (1983).

**HUTCHISON, Justice**:

Respondent Deborah L. Jarrett, as the Executrix of the Estate of Kevin M. Jarrett, instituted a wrongful death action against Petitioner Speedway LLC after its employee, Brandy Liggett, while driving her vehicle after leaving work and running a personal errand, crossed the center line and collided with Mr. Jarrett's motorcycle, killing him. At the time of the accident and during her nine-hour shift at Speedway, Ms. Liggett was under the influence of illegally obtained prescription drugs. From the outset, but to no avail, Speedway asserted that, as a matter of law, it had no legal duty to prevent Ms. Liggett from driving her vehicle because it did not engage in any affirmative conduct that caused or contributed to her impairment. The circuit court permitted the jury to consider whether Speedway was negligent in Mr. Jarrett's death, and it found it to be 30% at fault. Speedway was ordered to pay damages in excess of $2 million. Upon review of Speedway's appeal of that verdict, and for the reasons stated below, we find that the circuit court erred in concluding that Speedway had a legal duty in this case and, accordingly, we conclude that Speedway is not liable for Mr. Jarrett's death. We, therefore, reverse the circuit court's order denying Speedway's post-trial motion for judgment as a matter of law.[1]

---

[1] The West Virginia Association for Justice, The Defense Trial Counsel of West Virginia, American Tort Reform Association, Chamber of Commerce of the United States of America, NFIB Small Business Legal Center, National Association of Convenience Stores, and American Property Casualty Insurance Association, as amici curiae, submitted briefs in this appeal and the Court has considered them in conjunction with the parties' arguments.

## I. Factual and Procedural Background

Ms. Liggett had been a Speedway employee for three days when, on September 15, 2015, she was scheduled to work the 6:00 a.m. – 2:00 p.m. shift. For much of that morning, she was assigned to work the coffee bar, including stocking cups, lids and straws, cleaning the coffee pots, and wiping down the counters. She performed these tasks without incident. Later in the morning, Ms. Liggett was set up in an office to watch training videos, a requirement of her employment. Bobbie Jo Maguire, a Speedway manager and Ms. Liggett's supervisor, testified that twice when she entered the office while Ms. Liggett was watching the videos, she observed that Ms. Liggett had dozed off (once while standing up). According to Ms. Maguire, each time, Ms. Liggett became startled when she walked in, and she immediately woke up. When Ms. Maguire asked Ms. Liggett if she was okay and if she wanted to come back to watch the videos another day,[2] Ms. Liggett responded that she was fine, that she was "just tired," and that she was just thinking about things that were going on at home.

Sometime between 10:00 a.m. and noon that day, Ms. Maguire directed Ms. Liggett to change out the trash bags in the trashcans outside to allow her to get some fresh air. While she was performing that task, Ms. Maguire and employee Jennifer Wells both

---

[2] Ms. Maguire testified that the training summary report showed that Ms. Liggett watched in excess of ten videos that day, each varying in length from 15 minutes to one hour. She asked Ms. Liggett if she wanted to come back another day because "[i]f she was falling asleep not watching what was being shown to her[,] [y]ou're not going to take that in."

2

observed her nod off while standing up with a trash bag in her hand. Ms. Wells remarked to Ms. Maguire that "something was going on," that "something had to be wrong with her," and that she should not drive home. Ms. Maguire again asked Ms. Liggett if she was okay and if she wanted to go home and come back another day. Ms. Liggett repeated that she was "just tired" and that she was just thinking about things that were going on at home. Ms. Liggett declined Ms. Maguire's offer to go home.

Ms. Maguire testified that, aside from the three instances when she observed Ms. Liggett nodding off, she did not observe any other concerning behavior such as slurred speech or glassy eyes; that she believed Ms. Liggett when she said she was "just tired"; that she had no reason to believe that Ms. Liggett was impaired; and that if she had suspected illegal drug use, she would have immediately contacted her district manager. Similarly, Ms. Wells testified that, other than seeing Ms. Liggett nodding off outside, she saw no other signs that she might be impaired.

For her part, Ms. Liggett testified that, for at least one year prior to the day of the accident, she was addicted to prescription medications; that she illegally purchased them "off the street"; that she consumed illegal drugs prior to going to work on the morning of the accident; and that she surreptitiously took more drugs in the bathroom at Speedway during her shift that day. Ms. Liggett further testified that no one – including members of her own family and anyone from Speedway – knew that she had a substance abuse problem. Ms. Liggett testified that she did not ask for a ride home prior to the accident because she

3

believed that she was capable of driving herself. She further testified that there were family members she could have called if she needed a ride, that she had money for a cab, and that if anyone from Speedway had offered her a ride, she would have refused and advised them that she was capable of driving herself.

At some point during the workday, Ms. Maguire asked Ms. Liggett if she was available to work past her scheduled shift because another employee failed to show up and Ms. Maguire, whose shift ended at 4:00 p.m., needed to leave at 2:30 p.m. for an appointment. Ms. Liggett agreed to work until 3:00 p.m. (i.e., one hour past her scheduled shift), testifying that, as a newly hired employee, "I didn't want to tell [Ms. Maguire] no." Ms. Liggett worked the extra hour without incident.

After she left the Speedway store a little after 3:00 p.m., Ms. Liggett drove two miles to her son's school to drop off football equipment. She then left the school and began her drive home. Shortly thereafter, approximately five miles from the school, she crossed the center line and collided with Mr. Jarrett's motorcycle, killing him. After the accident, Ms. Liggett tested positive for amphetamine, benzodiazepine, and buprenorphine and subsequently pled guilty to driving under the influence causing death, *see* W. Va. Code

§ 17C-5-2(b), negligent homicide, *see* W. Va. Code § 17C-5-1, and driving left of center, *see* W. Va. Code § 17C-7-1, for which she was sentenced to a period of incarceration.[3]

Respondent filed suit against Speedway, as well as Ms. Liggett and her grandmother, Carol Howard, who owned the vehicle Ms. Liggett was driving.[4] As against Speedway, respondent alleged that Speedway was negligent in that it, "by its affirmative conduct" of "(1) directing [Ms. Liggett] to work overtime in her already incoherent state and/or (2) allowing her to drive on the highway in an obviously exhausted and/or impaired state[,] exposed the motoring public to unreasonable risk and/or hazard;" that Speedway "knew or should have known that there was a high likelihood of injury and/or death to the motoring public;" and that Speedway "created a foreseeable risk of harm to others to which [it] had a duty to guard against." Discovery ensued and, upon its conclusion, Speedway filed a motion for summary judgment on the ground that it had no legal duty to prevent Ms. Liggett from driving her vehicle home after work because it did not engage in any affirmative conduct that created her impairment. The circuit court denied the motion.

---

[3] After learning of the accident and that Ms. Liggett tested positive for illegal substances, Ms. Maguire placed the following notation in Ms. Liggett's personnel file: "On something or for some reason kept falling asleep while here including [e]mptying outside trash [and] while standing watching [training videos]. Auto [a]ccident killed a guy."

[4] Respondent settled with the individual defendants before trial.

The case proceeded to trial in July of 2019 and, upon its conclusion, the jury attributed 70% of fault to Ms. Liggett and 30% to Speedway, having found by way of a special interrogatory that Speedway "was negligent and that such negligence was a cause or contributing cause of the injuries to and death of Kevin Jarrett." The jury awarded respondent total damages in the amount of $823,403.38; Speedway was ordered to pay $268,204.50 of that amount, including interest, court costs, and jury fees.

Speedway timely filed a renewed motion for judgment as a matter of law under West Virginia Rule of Civil Procedure 50(b), again arguing that, as a matter of law, it was under no legal duty to prevent Ms. Liggett from driving herself home after work because it engaged in no affirmative conduct that created her impairment.[5] The circuit court denied the motion. However, the circuit court granted respondent's post-trial motions for additur[6] and for a (partial) new trial on certain non-economic damages.[7] At the second

---

[5] Speedway had timely moved for judgment as a matter of law under West Virginia Rule of Civil Procedure 50(a) following the presentation of respondent's case-in-chief. The circuit court denied the motion.

[6] *See* W. Va. R. Civ. P. 60(b). By order entered on November 18, 2019, the circuit court reformed the damages award for "lost wages to July 22, 2019," from $306,600 to $477,708, the amount testified to by respondent's expert witness. The circuit court determined that the jury "clearly intended" to award that amount "as evidenced by the jury question seeking the numbers testified to by" respondent's expert.

[7] *See* W. Va. R. Civ. P. 59. Also in its November 18, 2019, the circuit court granted a new trial on damages for (1) "[t]he sorrow, mental anguish and solace, including loss of society, loss of companionship, loss of comfort, loss of guidance, loss of kindly offices, and loss of advice of Kevin Jarrett" and (2) "the loss of services, protection, care and assistance provided by Kevin Jarrett." The jury had awarded respondent $80,000 and

Continued . . .

6

trial on the limited damages issue, the jury awarded respondent $5,862,323.[8] The circuit

court entered a second final judgment order that, with pre-judgment interest, awarded

respondent a total amount of $6,676,744.38. Speedway was ordered to pay $2,043,792.82

of that amount, plus post-judgment interest[9] and various costs. Speedway subsequently

filed its final motion for judgment as a matter of law under Rule 50(b) and, in the

alternative, a motion for a new trial on all issues under Rule 59, or to alter or amend the

final judgment order under Rule 59(e) to correct the award of post-judgment interest. The

circuit court denied all of Speedway's motions. This appeal followed.

## II. Standard of Review

Our review is focused on the circuit court's order denying Speedway's

renewed Rule 50(b) motion as to whether Speedway, under the evidence presented, had a

legal duty to prevent Ms. Liggett from driving herself home after work[10]:

---

$100,000, respectively, for these non-economic losses, which the circuit court found to be
"grossly inadequate" and "so low that under the facts of the case reasonable minds cannot
differ about its inadequacy."

[8] The second jury awarded respondent $5,500,000 in sorrow, mental anguish and
solace damages and $362,333 for loss of services. *See* n.7, *supra.*

[9] The circuit court assessed post-judgment interest from July 26, 2019, the date of
the initial jury award of damages following the first trial as reformed by the court in its
November 18, 2019, order. *See* n.6, *supra.*

[10] On appeal, Speedway also argues that the circuit court committed various trial
errors, including granting respondent's request for additur and for a partial new trial on
certain non-economic damages; permitting expert testimony concerning the value of lost
household services; admitting evidence of Speedway's internal guidelines and policies;
Continued . . .

7

The appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule 50(b) of the West Virginia Rules of Civil Procedure [1998] is *de novo*.

Syl. Pt. 1, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009). Furthermore,

"[i]n determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved." Syllabus Point 5, *Orr v. Crowder,* 173 W.Va. 335, 315 S.E.2d 593 (1983).

*Id.* at 2, 680 S.E.2d at 17, Syl. Pt. 3. *See also* Syl. pt. 1, *Jones v. Patterson Contracting, Inc.*, 206 W. Va. 399, 524 S.E.2d 915 (1999) ("""When the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right to recovery, the trial court should direct a verdict in favor of the defendant." Syl. Pt. 3, *Roberts v. Gale*, 149 W.

---

admitting Ms. Maguire's post-accident notation that she placed in Ms. Liggett's personnel file; prohibiting Speedway from referencing the first trial and types of wrongful death damages in the second trial, including refusing to give a jury instruction regarding the same; refusing to allow Speedway's corporate representative to testify at trial; and overruling Speedway's objections to allegedly improper closing argument by respondent's counsel. Speedway further argues that the circuit court erred in connection with its assessment of post-judgment interest. Because our resolution of the legal question concerning Speedway's duty of care in favor of Speedway is dispositive of the appeal, we need not address these other alleged errors.

Va. 166, 139 S.E.2d 272 (1964).' Syl. Pt. 1, *Brannon v. Riffle*, 197 W. Va. 97, 475 S.E.2d 97 (1996).").  With these standards to guide us, we now consider Speedway's appeal.

### III. Discussion

To succeed on a negligence claim, "a plaintiff must establish by the preponderance of the evidence that the defendant owes him a duty, that there was a negligent breach of that duty, and that injuries received by the plaintiff resulted proximately from the breach of the duty." *Jones v. Logan Cnty. Bd. of Educ.*, 247 W. Va. 463, __, 881 S.E.2d 374, 383 (2022) (citation omitted). "The elements of duty, breach and injury are essential to actionable negligence and in the absence of any of them the action must fail." *SER Maxxim Shared Servs., LLC v. McGraw*, 242 W. Va. 346, 351, 835 S.E.2d 590, 595 (2019) (citation omitted). At issue is whether the circuit court erred in concluding that Speedway engaged in conduct that created an unreasonable risk of harm to others, including Mr. Jarrett, thereby triggering a legal duty on the part of Speedway to prevent Ms. Liggett from driving home after work. "[T]he threshold question in all actions in negligence is whether a duty was owed." *Strahin v. Cleavenger*, 216 W. Va. 175, 183, 603 S.E.2d 197, 205 (2004). "'No action for negligence will lie without a duty broken.'" *Id*. (quoting Syl. Pt. 1, in part, *Parsley v. Gen. Motors Acceptance Corp*., 167 W. Va. 866, 280 S.E.2d 703 (1981)).

In determining whether a duty exists, courts must consider foreseeability of risk and, "[b]eyond the question of foreseeability, . . . policy considerations underlying the

core issue of the scope of the legal system's protection. . . includ[ing] the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant." *Robertson v. LeMaster*, 171 W.Va. 607, 612, 301 S.E.2d 563, 568 (1983) (emphasis added and citations omitted).

We have instructed that "courts bear the sole responsibility for deciding whether a legal duty is owed in a given case." *Strahin*, 216 W. Va. at 183, 603 S.E.2d at 205. "The determination of whether a defendant in a particular case owes a duty to the plaintiff is not a factual question for the jury; rather the determination of whether a plaintiff is owed a duty of care by the defendant must be rendered by the court as a matter of law." Syl. Pt. 5, *Aikens v. Debow*, 208 W. Va. 486, 541 S.E.2d 576 (2000). *See also id.* at 505, 541 S.E.2d at 595 (Starcher, J., concurring) ("Because the existence of a defendant's duty is relative to the 'circumstances of time, place, manner or person,' the evaluation of whether a defendant in a particular case had such a duty is a question for the circuit courts to consider on a case-by-case basis." (quoting Syl. Pt. 1, in part, *Dicken v. Liverpool Salt & Coal Co.*, 41 W. Va. 511, 23 S.E.582 (1895)).

In *Robertson*, this Court was confronted with whether an employer owed the motoring public a duty of care where an exhausted employee, while driving home from work after an extra-long shift, caused a motor vehicle accident that injured the plaintiffs. In that case, LeMaster, along with other employees of Norfolk & Western, performed heavy manual labor at a derailment site over a continuous period of twenty-seven hours.

10

LeMaster advised his foreman several times that he was tired and asked to go home; each time, he was refused. *Id.* at 608-09, 301 S.E.2d at 564-65. When LeMaster was finally allowed to go home, the evidence showed that he was so exhausted that, as a railroad employee drove him from the derailment site to his (LeMaster's) vehicle, LeMaster fell asleep with a lighted cigarette in his hand. *Id.* at 609, 301 S.E.2d at 565. While driving himself the fifty miles to his home,[11] LeMaster fell asleep and caused the accident that injured the plaintiffs. *Id.*

The plaintiffs in *Robertson* sued Norfolk & Western alleging that it acted negligently in "order[ing], forc[ing] and requir[ing]" LeMaster to work for "[27] hours straight without rest, and then to leave the . . . place of employment without providing either rest or transportation home when it knew or should have known that its employee constituted a menace to the health and safety of the public." *Id.* at 610, 301 S.E.2d at 566.The circuit court granted the railroad company's motion for a directed verdict on the issue of liability because it found, inter alia, that the facts failed to demonstrate that it owed a duty of care to the plaintiffs. *Id.*

On appeal, the railroad company maintained that "as a matter of law it owed no duty to control an employee acting outside the scope of employment." *Id.* at 611, 301

---

[11] While the employer drove LeMaster to his vehicle so that he could drive himself home after working for twenty-seven hours straight, the employer offered to drive the other members of the work crew to their respective homes rather than to their vehicles. 171 W. Va. at 609, 301 S.E.2d at 565.

S.E.2d at 567. Though this Court acknowledged that "under traditional principles of master-servant law an employer is normally under no duty to control the conduct of an employee acting outside the scope of his employment[,]" *id.* (citing *Restatement (Second) of Torts* § 317 (1965)), we clarified that the issue was "not the [employer's] failure to control LeMaster while driving on the highway; rather it [was] whether the [employer's] conduct prior to the accident created a foreseeable risk of harm." *Id.*

In reversing the circuit court's ruling and holding that a duty existed in *Robertson*, the Court explained that "'"[[d]uty]" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in light of the apparent risk.'" *Id.* (quoting W. Prosser, *The Law of Torts* § 53 (4th ed. 1971)). Ultimately, the Court held that "[o]ne who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm." *Id.* at syl. pt. 2. The Court in *Robertson* determined that the employer

> could have reasonably foreseen that its exhausted employee, who had been required to work over 27 hours without rest, would pose a risk of harm to other motorists while driving the 50 miles from the [employer's] office to his home. Indeed, it could be said that the [employer's] negligent conduct under these facts was not merely a failure to exercise appropriate precautionary measures, *but includes an element of affirmative conduct in requiring LeMaster to work unreasonably long hours and then driving him to his vehicle and sending him out on the highway in such an exhausted condition as to pose a danger to himself or others. When such affirmative action is*

12

> *present, liability may be imposed* regardless of the existence of a relationship between the defendant and the party injured by the incapacitated individual. *See Restatement (Second) of Torts* § 321, Comment a (1965); *Leppke v. Segura,* 632 P.2d 1057 (Colo.App.1981). *See also Clark v. Otis Engineering Corp.,* 633 S.W.2d 538 (Ct. of App.Tex.1982).

*Robertson*, 171 W. Va. at 612-13, 301 S.E.2d at 568-69 (emphasis added).

Here, in denying Speedway's renewed motion for judgment as a matter of law, the circuit court determined that this case was "like *Robertson*," finding that Ms. Maguire, after seeing Ms. Liggett "falling asleep on the job," had a duty to stop Ms. Liggett from driving herself home.

On appeal, Speedway contends that the circuit court erred in concluding that Speedway's conduct satisfied the duty standard set forth in *Robertson*. Speedway argues that, even when viewed in the light most favorable to respondent, the evidence showed that Ms. Liggett had already consumed illegally obtained prescription drugs before she arrived at work; that her subsequent consumption of drugs at work was done surreptitiously; that neither Ms. Maguire nor anyone else at Speedway knew that she was under the influence of drugs; that, although Ms. Liggett was observed falling asleep on the job, when asked if she was okay, she twice explained that she was "just tired" and was preoccupied with things at home; that, following those incidents, Ms. Liggett showed no other signs of impairment such as glassy eyes or slurred speech; and that there was no evidence establishing that scheduling Ms. Liggett to work one hour past her scheduled shift contributed to her impairment. Ms. Liggett testified that there were family members that she could have called

13

to pick her up but she believed that she was capable of driving herself home. Critically, she testified that she would have refused any offer from Ms. Maguire for someone from Speedway to drive her. Speedway contends that this evidence is so far removed from the "affirmative conduct" that *Robertson* requires that, as a matter of law, no duty on the part of Speedway was established.

By contrast, respondent argues that Speedway's conduct in this case was "directly in line" with the employer's conduct in *Robertson*. She contends that the evidence showed that Speedway engaged in affirmative conduct that it knew or should have known created an unreasonable risk of harm to others by (1) allowing Ms. Liggett to remain at work even though it knew she was impaired and/or exhausted; (2) allowing and scheduling Ms. Liggett to work overtime in her impaired and/or exhausted state; (3) "turn[ing] her loose on the highway in an obviously exhausted/impaired condition[;]"and (4) ceasing its supervision of her when her supervisor, Ms. Maguire, left the premises for an appointment. Respondent argues that, given Ms. Liggett's apparent exhaustion and/or impairment from drugs, coupled with Ms. Maguire and Ms. Wells's awareness that something was noticeably wrong with her, it was foreseeable that Ms. Liggett would endanger other motorists if she was permitted to drive home after work.

Respondent relies on the Texas Supreme Court case of *Otis Engineering Corporation v. Clark*, 668 S.W.2d 307 (Tex. 1983). In *Otis*, a supervisor sent an obviously intoxicated employee (with a history of drinking on the job) home in the middle of his shift after co-workers reported that "he was not coordinated, was slurring his words,. . . . was

14

weaving and bobbing on his stool and about to fall into his machine." *Id.* at 308. Although the supervisor "knew [the employee] was in no condition to drive home safely that night[,]" he escorted him to the parking lot and asked if he could make it home. *Id.* The employee answered that he could, but three miles from the employer's premises, was involved in a fatal accident. *See id.* The *Otis* plaintiffs argued that the employer's actions of sending the employee "whom it knew to be intoxicated" home "in the middle of his shift" "was an affirmative act which imposed a duty on [the employer] to act in a non-negligent manner." *Id.* The court found that summary judgment in favor of the employer was improper, and that the trier of fact should be permitted to decide whether the employer "acted as a reasonable and prudent employer" under the facts presented. *Id.* at 311. Respondent argues that the facts of this case are so similar to those in *Otis* that this Court should, likewise, find that Speedway failed to "act[] as a reasonabl[y] prudent employer in permitting [its] obviously intoxicated employee to drive[.]"

The issue before us is whether, under *Robertson*, Speedway's conduct relating to Ms. Liggett created a foreseeable risk of harm to others that Speedway had a duty to guard against. We conclude that it did not.

For Speedway to have had a duty to exercise reasonable care to prevent Ms. Liggett from driving her vehicle home after work on the day of the accident, it must have engaged in "affirmative conduct, and thereafter realize[d] or should [have] realize[d] that such conduct . . . created an unreasonable risk of harm to another[,]" including Mr. Jarrett. Syl. Pt. 2, in part, *Robertson*, 171 W. Va. at 564, 301 S.E.2d at 607. In *Overbaugh v.*

15

*McCutcheon*, 183 W. Va. 386, 396 S.E.2d 153 (1990), we considered whether an employer who hosted a party on its premises where it gratuitously furnished alcohol to employees and guests had engaged in "affirmative conduct creating an unreasonable risk of harm to another" and was, therefore, liable after its noticeably intoxicated employee[12] caused a fatal accident after leaving the party. *Id.* at 388, 396 S.E.2d at 155. We found that the employer recognized that the employee had overindulged in alcohol and told him to remain on the premises until a ride home could be arranged. *See id.* The accident occurred after the employee left of his own accord. *See id.* Under these facts, we concluded that "there was a lack of affirmative conduct creating an unreasonable risk of harm to another on the part of the employer gratuitously furnishing alcohol to an employee" and that "there [was] no evidence to indicate that the employer exercised control over an incapacitated employee sufficient to create a duty on the employer[.]" *Id.* at 392, 396 S.E.2d at 159.

Respondent's claim that Speedway's conduct satisfies what *Robertson* requires to establish a duty is equally unavailing. Speedway's conduct of allowing Ms. Liggett to continue working her shift and then work an extra hour past her shift and to leave her unsupervised while watching training videos does not constitute "affirmative conduct" that "created an unreasonable risk of harm to another." *Id.* (Emphasis added). Rather, the evidence was uncontroverted at trial that Ms. Liggett arrived for her shift while already

---

[12] Though it was disputed by the parties whether the offending employee was, in fact, employed by the defendant companies at the time of the accident, that issue was not before the Court, *see id.* at 387, 396 S.E.2d at 154, and the question of employer liability was considered. *See id.* at 391-92, 396 S.E.2d at 158-59.

16

under the influence of drugs and then took more drugs at work surreptitiously. There was no evidence that anyone at Speedway contributed to her state of impairment from drugs by either providing or condoning her consumption of them.[13] Aside from the three instances where Ms. Liggett was observed falling asleep, she exhibited no signs of impairment such as glassy eyes or slurred speech, and she worked the remainder of her shift (including the hour of overtime) without incident.[14] Following the accident, Ms. Liggett tested positive for various and sundry prescription medications that she had illegally purchased "off the street" and she pled guilty to various crimes related to the accident, including driving under the influence causing death. Further, although respondent argues that Ms. Maguire either knew, or should have known, that Ms. Liggett was too "exhausted" to drive herself home, thereby suggesting that fatigue contributed to the accident, she points to no evidence indicating that fatigue was found to have caused or contributed to the accident.[15] In

---

[13] *See Lett v. Collis Foods, Inc.*, 60 S.W.3d 95, 103 (Tenn. Ct. App. 2001) (where employee reported to work in obviously intoxicated state and, upon leaving the premises, was involved in an automobile accident that injured the plaintiff, the court found the employer had no duty to prevent the employee from driving, reasoning, in part, that the employer "did not contribute to, condone, or seek to accommodate, [the employee's] intoxication. . . . the employer did not provide her mobility she otherwise did not have; it did not encourage her to drive home; and it did not contribute to the condition that made it unsafe for her to drive.").

[14] The last of the three instances where Ms. Liggett was observed nodding off was between 10:00 a.m. and noon, when she was changing out the trash cans outside the store. Ms. Liggett did not leave until 3:00 p.m.

[15] Rather, the evidence proved that Ms. Liggett was under the influence of amphetamine, benzodiazepine, and buprenorphine at the time of the accident and that she subsequently pled guilty to driving under the influence causing death.

allowing Ms. Liggett to drive her own vehicle home after her shift, Speedway "did no more than acquiesce in [her] determination to drive [her] own car." *Lett v. Collis Foods, Inc.*, 60 S.W.3d 95, 103 (Tenn. Ct. App.2001).[16] Indeed, Ms. Liggett testified that she believed she was capable of driving herself home that day, that there were family members she could have called if she needed a ride, that she had money for a cab, and that she would have refused a ride home had anyone from Speedway offered to drive her. The evidence at trial, when viewed in the light most favorable to respondent, failed to demonstrate that Speedway engaged in affirmative conduct that created an unreasonable risk of harm to the

---

[16] Quoting *Cecil v. Hardin*, 757 S.W.2d 268, 272 (Tenn. 1978), *superseded by statute on other grounds as stated in Biscan v. Brown*, 160 S.W.3d 462 (Tenn. 2005).

18

motoring public, including Mr. Jarrett.[17] Therefore, Speedway had no duty to exercise

reasonable care by preventing Ms. Liggett from driving.[18]

---

[17] In her brief to this Court, respondent also asserts that "arguably qualif[ying] under *Robertson* as affirmative conduct" giving rise to a duty to prevent the threatened harm in this case were certain acts of omission on the part of Speedway – that is, its decisions "not to conduct an investigation of [Ms.] Liggett's impairment," and "not to fully evaluate [Ms. Liggett] before and after her overtime shift." *See Wal-Mart Stores East, L.P. v. Ankrom*, 244 W. Va. 437, 448, 854 S.E.2d 257, 268 (2020) (While 'a person does not [generally] have a duty to protect others from the deliberate criminal conduct of third parties,' that duty of protection may arise 'when the person's affirmative actions or omissions have exposed another to a foreseeable high risk of harm from the intentional misconduct.'" quoting *Miller v. Whitworth*, 193 W. Va. 262, 266, 455 S.E.2d 821, 825 (1995) (internal citation omitted)). "Omission" means "[a] failure to do something; esp., a neglect of duty[.]" Black's Law Dictionary 1311 (11th ed. 2019). As we have already recounted, the evidence adduced at trial simply did not warrant an investigation or evaluation of Ms. Liggett for drugs and/or fatigue and, thus, a failure to act in this regard did not give rise to a duty on the part of Speedway to protect others by preventing Ms. Liggett from driving home after work.

[18] Under similar circumstances involving intoxicated or fatigued employees who caused injury after work hours and off the employer's premises, courts in other jurisdictions have likewise held that the employer owed no legal duty to the injured plaintiffs. *See Bruce v. Chas. Roberts Air Conditioning*, 801 P.2d 456 (Ariz. Ct. App. 1990) (rejecting plaintiff's claim that employer "had a duty to exercise reasonable care to prevent [its employee] from leaving [the employer's] premises while intoxicated . . . In this case [the employee's] excessive drinking did not in and of itself create an unreasonable risk of bodily harm to others. What did so was [the employee's] conduct in driving his pickup truck while intoxicated. That conduct took place away from [the employer's] business premises and some three hours later." (Footnote omitted)); *Cannizzaro v. Marinyak*, 57 A.3d 830, 832 (Conn. App. Ct. 2012) (concluding that "although the plaintiff produced sufficient evidence to a establish a question of fact regarding the defendant's constructive knowledge of [the employee's] consumption of alcohol on the defendant's premises, nonetheless, as a matter of law, the defendant did not owe a duty of care to the plaintiff"); *Behrens v. Harrah's Ill. Corp.*, 852 N.E.2d 553, 556, 557 (Ill. App. Ct. 2006) (after weighing "the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant," the court found "no duty existed requiring the employer to assure that [a fatigued] employee could drive home safely after working overtime" (citations omitted));
Continued . . .

## IV. Conclusion

Based upon all of the foregoing, we conclude that the circuit court erred in denying Speedway's Rule 50(b) motion for judgment as a matter of law and order that the jury verdict in respondent's favor be reversed.

Reversed.

---

*Barclay v. Briscoe*, 47 A.3d 560, 580 (Md. 2012) (rejecting "employer liability for third party injuries caused by an exhausted employee commuting home"); *Hill v. Moore*, 290 So.3d 769, 774 (Miss. Ct. App. 2020) (plaintiff failed to show that employer "owed any duty to prevent [employee] from leaving the premises, especially considering there was no evidence that [the employer] knew [the employee] was under the influence of any drugs. . . . [E]ven if [the employer] suspected [the employee] was intoxicated [the employer] . . . still owed no duty to [the plaintiff] under the law. [The employer] did not 'contribute to, participate in, or seek to accommodate' any such intoxication." (quoting *Lett*, 60 S.W.3d at 104).); *Lett*, 60 S.W.3d at 105 ( stating that "[t]he employer's passive acquiescence in [the intoxicated employee's] leaving the premises and driving away in her own vehicle, acts [the employer] had no legal right to prevent, is simply not enough to impose a duty on this employer who was totally blameless in the condition – [the employee's] intoxicated state – that led to the accident and the plaintiff's injuries"); *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 408 (Tex. 2009) (holding that "because [the employer] took no affirmative action as a result of any perceived employee fatigue or incapacity, . . . [it] owed no legal duty to the plaintiffs in this case").